STATE of Wisconsin, Plaintiff-Respondent,

v.

Sherrie S. TUCKER, Defendant-Appellant.

Supreme Court

*No. 00–3354–CR. Oral argument September 12, 2002.—Decided March 5, 2003.*

2003 WI 12

(Also reported in 657 N.W.2d 374.)

For the defendant-appellant there were briefs and oral argument by *Paul LaZotte,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Kathleen M. Ptacek,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. WILLIAM A. BABLITCH, J. We are asked to decide under what circumstances a circuit court may restrict the disclosure of juror information in a criminal trial, and, if juror information is restricted, what precautions must be taken to avoid prejudice to the criminal defendant.

¶ 2. The defendant, Sherrie Tucker (Tucker), was convicted of possession with intent to deliver cocaine within 1,000 feet of a school while armed, in violation of Wis. Stat. §§ 961.41(1m)(cm), 939.05 and 961.49 (1999–2000).[1] Prior to jury selection, the circuit court judge told counsel off the record that "[i]t has been my practice to use numbers and not names in this court." The court proceeded to use numbers over defense counsel's objection "because it is a case involving sales of drugs." Although the jurors names were withheld from the record, both parties had access to all the juror information, including the jurors' names.

¶ 3. Tucker appealed her conviction, arguing that the use of numbers instead of the jurors' names constituted prejudicial error. The court of appeals certified the following issues to this court: (1) Whether voir dire by number constitutes an anonymous jury under *State v. Britt,* 203 Wis. 2d 25, 553 N.W.2d 528 (Ct. App. 1996), when the restriction only applies to using the jurors' names in open court; and (2) Whether *Britt's* holding that an anonymous jury may be empanelled only if there is a strong reason the jury needs protection should continue to be the legal standard in Wisconsin.

¶ 4. We hold that in accordance with the standard articulated in *Britt,* if a circuit court restricts any juror information, the court must make an individualized

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

determination that the jury needs protection and take reasonable precautions to minimize any prejudicial effect to the defendant. Therefore, we conclude that the circuit court in this case erroneously exercised its discretion in withholding the jurors' names from the record because it failed to make an individualized determination that the jury needed protection and failed to take reasonable precautions to minimize any prejudicial effect to Tucker. Nevertheless, we further conclude that the error was harmless based on the overwhelming evidence of Tucker's guilt.

¶ 5. Tucker also raised an issue regarding a ruling of the circuit court that denied the admission of out-of-court statements by an unavailable witness. We conclude that the circuit court did not erroneously exercise its discretion by refusing to admit the out-of-court statements by an unavailable witness since the court reached a reasonable conclusion through a rational process based upon the relevant facts. We further conclude that Tucker was not denied her constitutional right to present a defense based upon an independent review of the record.

## FACTS AND PROCEDURAL HISTORY

¶ 6. In March 1998, law enforcement officers executed a search warrant at an apartment shared by Tucker and her boyfriend, Damien McCray (McCray). In the apartment, officers found cocaine in a bag marked "Shiree Tucker," a .38 caliber revolver, and bullets. Tucker made a statement to police after a *Miranda*[2] warning was given, in which she admitted that the cocaine belonged to her and that she had been selling cocaine for about a month. Tucker was tried and

---

[2] *Miranda v. Arizona,* 384 U.S.436 (1966).

convicted of possession of cocaine with intent to deliver within 1,000 feet of a school while armed with a dangerous weapon, which resulted in a seven-year prison sentence. The circuit court judge stayed the prison sentence and instead ordered seven years of probation for Tucker.

## I. Restriction on Jurors' Names

¶ 7. Prior to jury selection for Tucker's trial, the circuit court judge told counsel off the record that "[i]t has been my practice to use numbers and not names in this court. . . . What I'm prohibiting is the names of jurors being stated in the courtroom and for the record when other people may be sitting in the audience and using those names for any other reason." When defense counsel objected, the judge explained that the use of numbers is appropriate because this was a case "involving drugs and an allegation of drug dealing which I think raises the bar to some extent in terms of any danger to jurors." The judge further explained that "it's the practice of this Court simply to use numbers and just go right into using numbers as opposed to names, not highlighting the fact that the numbers are used and certainly making no statement to jurors about numbers being used for safety or anything else." During the trial, the judge corrected defense counsel when he referred to a juror by name, stating "it's my practice to refer to the jurors by number, so please follow the practice." There was no other statement made in front of the jury regarding the use of numbers instead of their names.

## II. Out-of-Court Statements

¶ 8. In December 1998, McCray was interviewed by defense investigator, Cynthia Kollath (Kollath) and Tucker's attorney. Kollath prepared a memorandum

491

that summarized the interview. At Tucker's trial, Mc-Cray invoked his Fifth Amendment privilege, so defense counsel sought to introduce McCray's statements through Kollath's memorandum. Defense counsel argued that McCray's statements should be admissible as statements against penal interest or alternatively, as statements made under the residual hearsay exception for unavailable witnesses. The circuit court found that neither of these hearsay exceptions applied in this case because the statements lacked the requisite indicia of trustworthiness. Tucker filed a postconviction motion seeking a new trial based on two issues: (1) Whether the circuit court erred by not admitting McCray's out-of-court statements; and (2) Whether she had been denied the right to present a fair defense. After a hearing, the circuit court denied Tucker's postconviction motion for a new trial.

¶ 9. The court of appeals certified issues regarding the definition and use of an anonymous jury in light of the standard announced in *Britt*, and Tucker appealed the circuit court's refusal to admit McCray's out-of-court statements under an exception to the hearsay rule.

## ANALYSIS

### I. "Anonymous" Juries

¶ 10. Appellate review of a circuit court's decision to use an anonymous jury examines whether the circuit court properly exercised its discretion. *Britt*, 203 Wis. 2d at 34. According to the Seventh Circuit, the review of a court's decision regarding an anonymous jury is for "abuse of discretion, and must be particularly deferential to the trial court's substantial discretion." *United*

*States v. Crockett,* 979 F.2d 1204, 1215 (7th Cir. 1992). The proper exercise of a circuit court's discretion requires a reasoning process that considers the applicable law and the facts of record, leading to a conclusion that a reasonable judge could reach. *State v. Jeske,* 197 Wis. 2d 905, 912, 541 N.W.2d 225 (Ct. App. 1995). However, a circuit court erroneously exercises its discretion if it makes an error of law. *State v. St. George;* ¶ 37, 252 Wis. 2d 499, 643 N.W.2d 777.

¶ 11. The issues certified by the court of appeals deal with the definition of an "anonymous" jury and the circumstances under which an "anonymous" jury may be used. In this case, it may be more appropriate to describe the jury as a "numbers" jury instead of an "anonymous" jury since only the jurors' names were withheld from the record. Both parties had access to all the juror information, including the jurors' names. Furthermore, the public presumably could have obtained the jurors' names by inquiring at the clerk of courts' office. A jury is typically deemed "anonymous" when juror information is withheld from the public and the *parties themselves. See, e.g., Crockett,* 979 F.2d at 1215 n.10. Therefore, the jury in this case was not a classic "anonymous" jury. Notwithstanding whether the jury in this case is characterized as an "anonymous" or a "numbers" jury, if restrictions are placed on juror identification or information, due process concerns are raised regarding a defendant's rights to an impartial jury and a presumption of innocence. Accordingly, although this case does not deal with the classic "anonymous" jury, the reasoning in cases involving anonymous juries is beneficial to our analysis.

¶ 12. The empanelling of an anonymous jury is a relatively recent phenomenon that was rarely utilized

before the Second Circuit's opinion in *United States v. Barnes,* 604 F.2d 121 (2d Cir. 1979)[3]. The court in *Barnes* addressed juror anonymity with respect to its effect on the practice of voir dire. *Id.* at 142. In *Barnes,* the district court ordered that the jurors' identities, addresses, religious affiliations, and ethnic backgrounds remain anonymous, even from the parties themselves. *Id.* at 133. The court began its analysis by noting a judge's broad discretion in conducting voir dire. *Id.* at 137. The court then examined each of the restrictions placed on juror information and concluded that the jurors' demeanors and responses to questions regarding their family, education and other matters would provide substantially the same information as the juror information that was restricted. *Id.* at 142. Consequently, the court rejected the argument that the defendant was denied the ability to intelligently exercise peremptory challenges. *Id.* In sum, the Second Circuit held that the circuit court had permitted adequate questioning of the jury and had acted in accordance with its responsibility "to protect the jury, to assure its privacy, and to avoid all possible mental blocks against impartiality." *Id.* at 141. Although not explicit, the court essentially weighed the need to protect the jury, which was prompted by the defendant's ties to the mafia, against the rights of the defendant to an impartial jury.

¶ 13. A few years later, the Second Circuit addressed a different concern with the use of an anonymous jury in *United States v. Thomas,* 757 F.2d 1359 (2d Cir. 1985). In *Thomas,* the defendants argued that an

---

[3] Ephraim Margolin & Gerald F. Uelmen, *The Anonymous Jury: Jury tampering by another name?,* Crim. Just. at 14 (Fall 1994).

anonymous jury is an unconstitutional infringement on a defendant's presumption of innocence because it gives jurors the impression that the defendant is dangerous and a threat to the jurors' safety. *Id.* at 1363. The court in *Thomas* acknowledged the fundamental tenet that a defendant is presumed innocent until proven guilty, but nevertheless determined that an anonymous jury might be permissible if jurors are in need of protection. *Id.* at 1364–65. Therefore, the court rejected a per se rule against empanelling an anonymous jury, but concluded that an anonymous jury is warranted *only if* there is a "strong reason" to believe that the jury needs protection and if the court takes "reasonable precaution[s]" to minimize the impact of anonymity on the jurors' views of the defendant. *Id.* at 1365. The court noted that reasonable precautions were taken in that case, in part, because the judge gave the jury an "intelligent, reasonable and believable explanation for his actions that did not cast the defendants in an unfavorable light." *Id.* at 1364. In other words, the curative or precautionary instruction served to rebut any notion that the use of an anonymous jury was somehow a negative reflection on the defendant's guilt or character.

¶ 14. The Second Circuit's approach in *Thomas* has been widely adopted by both federal and state courts, including the Seventh Circuit and the Wisconsin court of appeals. *See Crockett,* 979 F.2d 1204; *Britt,* 203 Wis. 2d 25. The court of appeals in *Britt* held that a circuit court may, in its discretion, take reasonable steps to protect identifying information of jurors in a criminal case. *Britt,* 203 Wis. 2d at 34. In *Britt,* the circuit court had ruled that the jurors' names, addresses, and places of employment could not be publicly

revealed in open court or on the record; however, both parties had access to all juror information via written questionnaires.

¶ 15. Citing the Seventh Circuit's decision in *Crockett,* the *Britt* court concluded that a circuit court may empanel an anonymous jury if two criteria are met: (1) if there is a strong reason to believe that the jury needs protection; and (2) if reasonable precautions are taken to minimize any prejudicial effect to the defendant, so as to protect the defendant's rights to a fair and impartial jury. *Id.* at 34–36.

¶ 16. In *Britt,* the court of appeals concluded that the circuit court had satisfied both criteria and therefore properly exercised its discretion in empanelling an anonymous jury. *Id.* at 35, 38. First, the court cited several episodes of victim and witness intimidation prior to trial, and concluded that these constituted sufficient grounds to reasonably believe that the jury might also be subject to similar tactics, which warranted their protection. *Id.* at 35. Second, the court reasoned that the restrictions imposed by the circuit court were minimal since the parties were allowed to ask certain general questions regarding the jurors' residences and types of employment and were provided with all of the juror information via the written questionnaires. Thus, the court of appeals concluded that the circuit court had prudently balanced the jury's need for protection against the defendant's right to a fair and impartial jury. *Id.* at 37.

██

¶ 17. Similar to *Britt,* where juror information was only restricted in open court, the factual situation in this case does not involve a truly "anonymous" jury; nevertheless, we find the reasoning in *Britt* persuasive. Therefore, before a circuit court restricts any juror

information in an individual case, it should determine that the jurors are in need of protection and take reasonable precautions to avoid prejudice to the defendant. In this case, Tucker concedes that her opportunity for voir dire was not impeded since both parties had access to all the juror information. However, Tucker claims that her presumption of innocence was eroded by the circuit court's use of numbers without an individualized determination that the jury needed protection nor a precautionary statement made to the jury regarding the use of numbers instead of names.

¶ 18. Serious concerns regarding a defendant's presumption of innocence are raised when juror information is restricted, as in this case. As observed by the Supreme Judicial Court of Massachusetts, "[t]he empanelment of an anonymous jury triggers due process scrutiny because this practice is likely to taint the jurors' opinion of the defendant, thereby burdening the presumption of innocence." *Commonwealth v. Angiulo,* 615 N.E.2d 155, 171 (Mass. 1993). Therefore, courts must attempt to ensure that "juror anonymity should not cast any adverse reflection upon the defendant . . . ." *United States v. Scarfo,* 850 F.2d 1015, 1025 (3d Cir. 1988). Similarly, the Eleventh Circuit has stated,

> Unquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances. An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence. The presumption of innocence is "undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."

*United States v. Ross,* 33 F.3d 1507, 1519 (11th Cir. 1994) (quoting *Coffin v. United States,* 156 U.S. 432, 453 (1895)).

¶ 19. As illustrated by these federal and state court decisions, the restriction of juror information raises serious concerns regarding a defendant's rights to an impartial jury and a presumption of innocence. Accordingly, we uphold the two-prong test enunciated in *Britt* and conclude that if a court withholds any juror information, it must both: (1) find that a jury needs protection; and (2) take reasonable precautions to avoid prejudicing the defendant. We now examine whether the circuit court in this case satisfied this two-prong test.

¶ 20. The review of a circuit court's decision regarding the restriction of juror information is for abuse of discretion. *Crockett,* 979 F.2d at 1215. However, in order to properly exercise its discretion, a circuit court must "apply the correct standard of law to the facts at hand." *State v. Margaret H.,* 2000 WI 42, ¶ 32, 234 Wis. 2d 606, 610 N.W.2d 475. This court will reverse a discretionary decision if the circuit court's exercise of discretion "is based on an error of law." *Marten Transp. v. Hartford Specialty,* 194 Wis. 2d 1, 13, 533 N.W.2d 452 (1995). Thus, despite a deferential standard of review, we hold that the circuit court erroneously exercised its discretion by failing to apply the correct standard of law, namely the two-prong test announced in *Britt.*

¶ 21. First, the circuit court did not make an individualized determination that the jurors needed protection based on the specific circumstances present in Tucker's case. Rather, the court informed counsel that "it has been my *practice* to use numbers and not names" in drug cases. The circuit court repeatedly

referred to its "practice" of using numbers without specifically noting any particular factors that warranted the use of numbers in Tucker's case.

██

¶ 22. There are various factors that may be taken into account in making an individualized determination that a jury needs protection. Such factors may include, but are not limited to: (1) the defendant's involvement in organized crime; (2) the defendant's participation in a group with the capacity to harm jurors; (3) the defendant's past attempts to interfere with the judicial process; and (4) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment. *United States v. Darden,* 70 F.3d 1507, 1532 (8th Cir. 1995); *United States v. Ross,* 33 F.3d at 1520.

██

¶ 23. Second, the circuit court did not take necessary precautions to minimize any prejudicial effect to Tucker. Although the circuit court explained the use of numbers instead of jurors' names to counsel off the record, the court did not make any statement to the jurors regarding its use of numbers. Rather, the jurors were just referred to by number instead of name. The only statement heard by the jurors regarding the use of numbers was when the circuit court corrected defense counsel by stating, "it's my practice to refer to the jurors by number, so please follow the practice." The circuit court did instruct the jury on Tucker's presumption of innocence and on the State's burden of proving guilt beyond a reasonable doubt. However, we conclude that this instruction, by itself, was insufficient. When jurors' names are withheld, as in this case, the circuit court, at a minimum, must make a precautionary statement to the jury that the use of numbers instead of names

should in no way be interpreted as a reflection of the defendant's guilt or innocence. We recognize that in *Britt,* the circuit court apparently did not give a precautionary instruction to the jury; however, due to the potential for prejudice to the defendant, we conclude that such an instruction is necessary.

¶ 24. Any additional precautionary statements that are made to a jury when juror information is restricted should be based on factors and influences that may be present in a case, which could warrant withholding juror information. A precautionary statement must not mislead a jury, but must be based on factors and influences that are relevant in a particular case. In formulating a precautionary statement, a variety of factors and influences may be taken into account, as illustrated by statements that have been made by courts in other jurisdictions. *See, e.g., United States v. DeLuca,* 137 F.3d 24 (1st Cir. 1998) (district court may instruct jury that their identities will be withheld to ensure that no extrajudicial information is conveyed to them); *Scarfo,* 850 F.2d 1015 (district court may instruct jury that their anonymity is a precautionary measure to ensure that both sides get a fair trial); *State v. Samonte,* 928 P.2d 1 (Haw. 1996) (circuit court may instruct jury that anonymity is to protect jurors from contacts by the news media); *State v. Bowles,* 530 N.W.2d 521 (Minn. 1995) (circuit court may instruct jury that purpose of anonymity is to shield jurors from media harassment and undesirable publicity); *State v. McKenzie,* 532 N.W.2d 210 (Minn. 1995) (circuit court may instruct jury that they will remain anonymous to shield them from media harassment and ward off curiosity that might infringe on their privacy).

¶ 25. Courts must ensure that the use of numbers or any other restriction on identifying juror information is not interpreted as a reflection of a defendant's guilt or character. Therefore, in addition to instructing the jury on Tucker's presumption of innocence, the circuit court should have also given a precautionary instruction to the jury regarding the use of numbers instead of their names in order to minimize any potential prejudicial effect to Tucker.

¶ 26. Although the circuit court erred by failing to satisfy the two-prong test under *Britt,* the error in this case was harmless. An "error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *State v. Harvey,* ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189 (citing *Neder v. United States,* 527 U.S. 1, 18 (1999)). In this case, Tucker admitted to police after she was given a *Miranda* warning that the cocaine belonged to her and that she had been selling cocaine for about a month. Tucker told police that she had purchased an "eight-ball" of cocaine and sold it in amounts of $20, $30, and $50 for a $150–$200 profit. In addition, the cocaine found in Tucker and McCray's apartment was in a plastic bag marked "Shiree Tucker." Although the initial focus in a harmless error analysis is the error itself, the error itself is evaluated in the context of the whole. In light of the overwhelming evidence in this case, we conclude that it is clear beyond a reasonable doubt that a rational jury would have found Tucker guilty notwithstanding the circuit court's error.

¶ 27. Based on all the above, we hold that when a circuit court restricts any juror information, the court must: (1) make an individualized determination that

the jury needs protection; and (2) take reasonable precautions to minimize any prejudicial effect to the defendant, which includes making a precautionary statement to the jury so that the restriction does not negatively reflect on the defendant's guilt or character. The circuit court in this case failed to satisfy this two-prong test; however, the error was harmless in light of the overwhelming evidence of Tucker's guilt.

## II. Admissibility of Out-of-Court Statements

¶ 28. Evidentiary rulings are generally reviewed with deference to determine whether the circuit court properly exercised its discretion in accordance with the facts and accepted legal standards. *In re Michael R.B.,* 175 Wis. 2d 713, 720, 499 N.W.2d 641 (1993). This court will sustain an evidentiary ruling if " 'it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach.' " *State v. Gray,* 225 Wis. 2d 39, 48, 590 N.W.2d 918 (1999) (citing *State v. Sullivan,* 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998)). However, whether a circuit court infringes upon a defendant's right to present a defense is a question of constitutional fact that requires independent appellate review. *State v. Pulizzano,* 155 Wis. 2d 633, 648, 456 N.W.2d 325 (1990).

¶ 29. An out-of-court statement or "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Wis. Stat. § 908.01(3). In general, hearsay evidence is inadmissible; however, there are statutory exceptions to

502

this general rule. Wis. Stat. § 908.02. One exception to the hearsay rule is the admission of an unavailable declarant's statement against his or her penal interest. Wis. Stat. § 908.045(4). If a person invokes the privilege against self-incrimination, he or she is deemed "unavailable" for purposes of the hearsay rule. *State v. Peck,* 143 Wis. 2d 624, 644, 422 N.W.2d 160 (Ct. App. 1988). Therefore, as an initial matter, McCray was correctly deemed unavailable to testify at Tucker's trial since he had invoked the privilege against self-incrimination. Another exception to the hearsay rule, known as the "residual exception," permits admission of hearsay evidence that is not specifically addressed in the other exceptions, but possesses "comparable circumstantial guarantees of trustworthiness." Wis. Stat. § 908.045(6).

¶ 30. Tucker claims that McCray's out-of-court statements are admissible under the exception regarding statements against one's penal interest. Tucker argues that the following out-of-court statements made by McCray illustrate that they were against his penal interest: "I'm fittin' to go to the penitentiary," his statement that the drugs did not belong to Tucker and that she had no involvement with the drugs, and his statement of "yeah, right" when asked whether the drugs belonged to him. Tucker also claims that McCray's invocation of his Fifth Amendment rights indicates that his statements were against his penal interest.

¶ 31. Alternatively, Tucker argues that McCray's out-of-court statements are admissible under the residual exception because his statements were corroborated and are therefore trustworthy. Tucker claims that she is entitled to a new trial because the circuit court committed prejudicial error by not admitting McCray's out-of-court statements.

¶ 32. At the postconviction hearing, the circuit court upheld its prior ruling that McCray's statements were not admissible as either statements against penal interest or under the residual exception to the hearsay rule. The circuit court noted that McCray's statements attempted to exculpate Tucker without inculpating himself. For example, in McCray's statements of "I'm fittin' to go to the penitentiary," and that Tucker was not involved with the drugs, McCray never actually took responsibility for the drugs. The court noted that nowhere in Kollath's memo did McCray ever explicitly state that the drugs belonged to him; rather, his statements were only aimed at exculpating Tucker. With respect to McCray's response of "yeah, right" when asked whether the drugs belonged to him, the court realistically interpreted the statement as meaning "yeah, right, as if I would ever admit to that." This is a reasonable interpretation in light of the fact that the overriding concern throughout Kollath's memo was that McCray did not want to be incarcerated regardless of what happened to Tucker. Therefore, the court concluded that McCray's statements were not clearly against his penal interest, nor were they sufficiently trustworthy to be admissible under the residual exception.

¶ 33. The circuit court also considered whether its evidentiary ruling that McCray's out-of-court statements were inadmissible violated Tucker's constitutional right to a fair trial, particularly her right to present a defense. Upon reviewing the United States Supreme Court's decision in *Chambers v. Mississippi,* 410 U.S. 284 (1973), the circuit court distinguished Tucker's situation from the one in *Chambers,* where the defendant was denied a fair trial due to the cumulative impact of various evidentiary rulings. The court noted

504

that Tucker had been allowed to testify to the statements made by McCray in order to show why she made her statements to the police. However, the court concluded that McCray's statements "were properly excluded for the truth of the matter asserted and that the combination of those doesn't rise to a level in which she was denied her due process right to a fair trial."

¶ 34. Upon independent review of the trial transcripts and the postconviction hearing, we agree with the circuit court's determination that Tucker was not denied the constitutional right to a fair trial. We conclude that the circuit court demonstrated a rational process in making a reasonable evidentiary ruling on the admissibility of McCray's out-of-court statements. Accordingly, we hold that the circuit court did not err by refusing to admit McCray's out-of-court statements under either the exception for statements against penal interest or the residual exception to the hearsay rule.

*By the Court.*—The judgment of the circuit court is affirmed.

¶ 35. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring).* I agree with both the majority opinion and Justice Ann Walsh Bradley's concurrence that this is not a typical anonymous jury. The circuit court judge merely replaced the name of each potential juror with a number during the voir dire process; the district attorney and the defendant still had access to each juror's name.

¶ 36. Even though this is not a typical anonymous jury, this court should be concerned about the decision of the circuit court to refer to the jurors by number only. I believe that fundamental constitutional rights, namely the right to a presumption of innocence and an

impartial jury, are potentially implicated when a circuit judge deviates from the standard practice of full disclosure of juror information. It is therefore imperative that appellate courts properly scrutinize the effect that a deviation from the standard practice has on a defendant's constitutional rights.

¶ 37. I write separately to explain that the majority opinion's harmless error analysis misses the mark. The majority focuses only on the sufficiency of the evidence to convict and fails to assess whether the fundamental constitutional rights of the defendant were violated.

¶ 38. The majority concludes that a circuit court's erroneous decision to withhold juror information on voir dire is subject to the harmless error analysis established in *State v. Harvey*, 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189. *Harvey* holds that an error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.[1] In the present case, the majority opinion asserts that the evidence of the defendant's guilt was so "overwhelming" that no rational jury would have failed to convict her.[2] Thus, according to the majority opinion, juries selected behind closed doors or by blindfolded defendants will be acceptable in Wisconsin courts as long as the evidence of a defendant's guilt is "overwhelming."

¶ 39. In short, the *Harvey* harmless error standard employed by the majority opinion is improper because it assesses for a harm unrelated to the alleged

---

[1] *State v. Harvey*, 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189.

[2] Majority op., ¶ 26.

error.[3] The improper withholding of juror information during voir dire does not become harmless simply because the evidence against the defendant is strong.

¶ 40. In this case the court's task is to determine whether the defendant may have been convicted by jurors biased against her as a result of a selection process conducted in partial secrecy. The *Harvey* standard of a rational jury considering the evidence is inapplicable because our inquiry is whether the jury was rational, that is, whether the jury was impartial and unbiased, not whether an error during trial was harmless.

¶ 41. The United States Supreme Court has consistently recognized that an impartial judge and jury are "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair."[4] A finding of guilt by a jury biased against the defendant is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."[5] Justice Bradley's concurrence correctly identifies the alleged error in this case as an alleged structural defect.

¶ 42. Here the alleged error is an alleged structural defect because it is in the framework of the trial, the composition of the jury, not in a single event during

---

[3] There may be several harmless-error tests depending on the nature of the right violated. *In re Jayton S.*, 2001 WI 110, ¶ 40, 246 Wis. 2d 1, 629 N.W.2d 768 (Abrahamson, C.J., concurring) (quoting 5 Wayne R. LaFave et al., *Criminal Procedure* § 27.6(b), at 938–39 (2d ed. 1999)).

[4] *Neder v. United States*, 527 U.S. 1, 8–9 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577 (1986)).

[5] *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

trial. A defendant has a constitutional right to a presumption of innocence and an impartial jury.[6] The presumption of innocence and an impartial jury are cornerstones of our criminal justice system and guaranteed by the due process clause of the United States Constitution.[7] When juror information is withheld during voir dire of a criminal trial, violence may be done to a defendant's right to an unbiased and impartial jury.[8] A natural inference jurors selected under secretive circumstances may draw is that the defendant is a dangerous person from whom they need protection, thereby implicating the defendant's constitutional rights.

¶ 43. Moreover, information kept from defendants may interfere with their ability to effectively exercise their strikes, thereby further jeopardizing their right to an impartial jury.[9]

¶ 44. Consequently, an appellate court can only conclude that the withholding of juror information was "harmless" if it determines that the defendant's due process rights were nevertheless protected.[10]

¶ 45. In the present case, I am convinced that a structural error did not occur. The defendant was convicted by an unbiased and impartial jury and her

[6] *See, e.g., United States v. Mansoori,* 304 F.3d 635, 650 (7th Cir. 2002).

[7] *See United States v. Thomas,* 757 F.2d 1359, 1364 (2d Cir. 1985) ("the presumption of innocence is of significant importance, and is protected by the due process clause of the Fifth Amendment").

[8] *See Mansoori,* 304 F.3d at 650 (citations omitted).

[9] *See, e.g., United States v. DiDomenico,* 78 F.3d 294, 301 (7th Cir. 1996).

[10] *See* Wis. Stat. § 805.18 (2001–02), which provides as follows:

constitutional rights were protected despite the fact that the circuit court withheld information about the jurors. The only information withheld in the present case was the names of the potential jurors, and that information was only withheld from the public. The defendant and the State had access to juror names because they possessed the juror questionnaires. Indeed, the defendant does not identify any information that she or her attorney were unable to obtain from the juror questionnaires or through voir dire.

¶ 46. More importantly, the defendant in the present case was given extensive opportunity to conduct voir dire, including asking questions about the presumption of innocence. The record does not indicate that the defendant had any difficulty exercising her peremptory challenges, and the defendant does not argue that she was forced to accept jurors who indicated an inability to presume her innocent until proven guilty

(1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.

(2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

*See also State v. Lindell,* 2001 WI 108, ¶¶ 69–82, 245 Wis. 2d 689, 629 N.W.2d 223 (holding that whether a conviction will be reversed on an alleged error in jury selection focuses on whether the jury that actually sat on the case is impartial).

during voir dire. Furthermore, the circuit court instructed the jury on the presumption of innocence and the State's burden of proof at the end of the trial.

¶ 47. Lastly, while it was not a planned instruction, the circuit court judge explained to defense counsel in front of the venire that it was a regular practice "to refer to the jurors by number," thereby minimizing the likelihood that jurors would infer that their anonymity was required by the defendant's character in the present case.

¶ 48. If the withholding of juror information had infected the defendant's trial by compromising the presumption of innocence or jeopardizing the impartiality of the jury, a structural error would have occurred and we would be obligated to reverse the conviction, regardless of the strength or sufficiency of the evidence. Structural error defies harmless error review.[11] The *Harvey* test for harmless error set forth in the majority opinion does not apply in the present case. However, because I am convinced that none of the harm that can be caused by withholding juror information injured the defendant here by causing a structural error, no reason exists to overturn her conviction.

¶ 49. For the foregoing reasons, I concur.

¶ 50. ANN WALSH BRADLEY, J. *(concurring).* I agree with the majority that this is not a true "anonymous jury" case. Nevertheless, the majority treats it as an anonymous jury case and concludes, inevitably, that the error is harmless.

¶ 51. I write separately because I disagree with the majority's application of the harmless error rule in this case. Even if this were an anonymous jury, and

---

[11] *Neder,* 527 U.S. at 8. *See also Harvey,* 254 Wis. 2d 442, ¶ 37.

even if harmless error applies to anonymous jury cases, the majority incorrectly sets forth the circumstances in which the rule can be applied. Additionally, I write to emphasize that measures that shield juror information not only implicate the defendant's rights, but also contradict the presumption of openness that defines the American judicial system.

I

¶ 52. By treating this numbers jury as an anonymous jury, the majority dodges the threshold certified issue presented to us by the court of appeals. The certified issue inquires: "Whether voir dire by number constitutes an anonymous jury under *State v. Britt,* 203 Wis. 2d 25, 553 N.W.2d 528 (Ct. App. 1996), when the restriction applies only to using the jurors' names in open court but does not prohibit inquiry into any other identifying information."

¶ 53. The State argues, and I agree, that the jury empanelled in this case is not an anonymous jury. No information was withheld from the parties and no significant restriction was placed on questions asked at voir dire. The only restriction here is how jurors are addressed.

¶ 54. As the court of appeals notes in its certification, the restriction on Tucker is less than the restrictions placed on the parties in *Britt.* In that case, the circuit court restricted references on the record to the jurors' names, addresses, and employers. Here the only restriction curtailed the use of the jurors' names on the record. The parties were advised to use numbers only, rather than names, in referring to the jurors.

¶ 55. In *Britt,* there were indications of witness intimidation and harassment, factors that the court considered relevant to jury safety. Here, no such factors

511

existed. Instead, the circuit court expressed a policy of conducting voir dire by number without making any specific finding that anonymity was necessary to protect the jury.

¶ 56. Not only are the factors that existed in *Britt* absent from this case, but the record also fails to reveal any other factors that would justify empanelling an anonymous jury. The majority sets forth the *Thomas* test to determine whether an anonymous jury is warranted. *United States v. Thomas,* 757 F.2d 1359 (2d Cir. 1985). This two-prong test provides that an anonymous jury is warranted only if there is a "strong reason" to believe that the jury needs protection and if the court takes "reasonable precaution[s]" to minimize the impact of anonymity on jurors' views of the defendant. Majority op., ¶ 13. It then notes that this approach has been widely adopted by both federal and state courts, including the Seventh Circuit.

¶ 57. What the majority fails to acknowledge, however, is that the Seventh Circuit and others set a standard requiring something more than just assertions or beliefs in order to justify anonymity. The standard requires actual evidence indicating that intimidation is likely:

> In short, that the defendants had the ability and incentive to threaten jurors, without additional evidence indicating that they were likely to act on that ability and incentive, was not enough to justify the unusual step of juror anonymity.

*United States v. Mansoori,* 304 F.3d 635, 651 (7th Cir. 2002). *See, e.g., United States v. Darden,* 70 F.3d 1507, 1532–1533 (8th Cir. 1995); *United States v. Ross,* 33 F.3d 1507, 1520–1521 (11th Cir. 1994); *United States v. Vario,* 943 F.2d 236, 240–241 (2nd Cir. 1991).

¶ 58. If this were an anonymous jury, then I agree with the majority that the circuit court was required to make an individualized determination of the need for such a jury. I part ways with the majority because it fails to draw a distinction between a numbers jury, as here, and an anonymous jury. The result of this failure is that in concluding that harmless error applies in this "numbers only" situation, it incorrectly extends harmless error as a remedy in all truly anonymous jury cases. Such a widespread extension is contrary to precedent.

A

¶ 59. The majority opinion correctly notes the import of the right to an impartial jury. Yet, after acknowledging the import of the right, it diminishes the right by subjecting it to the harmless error rule. In failing to consider whether there may be structural error, the majority commits its own error.

¶ 60. The majority departs from well-established precedent which recognizes that certain constitutional deprivations are structural and therefore defy harmless error analysis. *Chapman v. California,* 386 U.S. 18, 23 (1967) (describing the right to counsel and the right to an impartial judge as examples of constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error); *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991) (describing a structural error as a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself" and citing the following cases as involving constitutional errors that are not subject to the harmless error rule: *Vasquez v. Hillery,* 474 U.S. 254 (1986) (unlawful exclusion of members of the defendant's race from a grand jury); *McKaskle v. Wiggins,* 465 U.S. 168 (1984) (the right to self-

513

representation at trial); *Waller v. Georgia,* 467 U.S. 39 (1984) (right to public trial)).

¶ 61. Similar to the rights described above, the improper use of an anonymous jury is not simply an error in the trial process. Rather, the improper use of an anonymous jury effectively denies an accused of the right to a trial by an impartial jury, thereby tainting the entire framework within which the trial process occurs. As such, it is a structural error that is not subject to harmless error review.

B

¶ 62. I recognize, however, that federal courts of appeals that have addressed the issue have not foreclosed the possibility that in very limited circumstances the harmless error rule could be applied to anonymous jury violations. The federal courts of appeals have imposed a much stricter standard in applying the harmless error rule than the majority sets forth here.

¶ 63. In *United States v. Sanchez,* 74 F.3d 562 (5th Cir. 1996), the defendant did not know the jurors' names and addresses or their spouses' or employers' names. The Fifth Circuit focused on the factors set forth in *United States v. Krout,* 66 F.3d 1420 (5th Cir. 1995), that justify an anonymous jury. Those factors include: "(1) the defendants' involvement in organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary penalties; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment." *Sanchez,* 74 F.3d at 564.

¶ 64. The court noted that virtually none of the factors listed in *Krout* justified the empanelling of an anonymous jury in the case before it. No one could demonstrate that the defendant was involved in organized crime or participated in a group that would attempt to harm jurors. Although the defendant was a renegade policeman, there was no evidence that he had attempted to interfere with the judicial process. Finally, the court noted that there was no indication that the jurors would be subjected to the type of publicity that would result in intimidation and harassment.

¶ 65. In finding error, the *Sanchez* court concluded that more than mere speculation or inferences of potential risk was needed to justify an anonymous jury. There must be actual evidence that anonymity was warranted before the defendant's right to be tried before a panel of identified jurors was required to be sacrificed. *Id.* at 565.

¶ 66. The government argued that even if the *Krout* criteria were lacking, the error was harmless because extensive voir dire was conducted that enabled the defendant to pick an unbiased jury. The *Sanchez* court disagreed. It concluded that the harmless error rule could not apply in anonymous jury cases except in very limited circumstances. It stated:

> Unless the type of circumstances listed in *Krout* exist, where the defendant has essentially compromised his right, he should receive a verdict, not from anonymous decisionmakers, but from people he can name as responsible for their actions. In closer cases on the merits of requiring anonymity, there might be room for a harmless error analysis, but this is not such a case. The conviction must be reversed and remanded for retrial.

*Id.*

¶ 67. A recent Seventh Circuit case, *United States v. Mansoori,* 304 F.3d 635 (7th Cir. 2002), discussed *Sanchez* and endorsed its conclusion that an erroneous decision to empanel an anonymous jury is not harmless where almost none of the pertinent factors supported the decision. It noted, however, that the *Sanchez* court left open the possibility that harmless error analysis might be appropriate in limited circumstances. It concluded that the case before it constituted such limited circumstances.

¶ 68. The *Mansoori* court described the case as a narcotics conspiracy that embraced "a large-scale, gang-related operation with ready access to firearms." *Id.* at 651. It noted that the defendants and their unindicted co-conspirators used weapons and violence in furtherance of the conspiracy, that the defendants faced very long prison terms, and that there had been some pretrial publicity. The court observed that although the circumstances were not, by themselves, sufficient to justify empanelling an anonymous jury, the record did support a basis for the concern of juror safety. That basis in the record, together with a three and one-half day "searching and thorough" voir dire which protected the defendants' right to an unbiased jury, justified a harmless error analysis. *Id.* at 652.

¶ 69. Here we note that none of the pertinent factors supports a decision to empanel an anonymous jury. There is no inference of organized crime or suggestion that the defendant is involved with a group that has the capacity to harm jurors. Likewise, there is no evidence to suggest that the defendant previously attempted to interfere with the judicial process or that this case received any publicity whatsoever. It was unlikely that the defendant would suffer a lengthy

incarceration or substantial monetary penalties. Indeed, as a result of her conviction, the defendant was placed on probation.

¶ 70. Regardless of whether use of the harmless error rule is precluded because an improper anonymous jury constitutes structural error, or whether it is precluded here because none of the pertinent factors supports the use of an anonymous jury, one thing is clear. The majority's general application of harmless error as a remedy in an anonymous jury case is error, and it is hardly harmless.

¶ 71. Ultimately, I concur in the mandate of the majority because I conclude that there was no error. The defendant had access to all juror information, including their names. Given that the only limitation here was how the jurors were addressed and that the judge advised the jury that it was her practice to use numbers rather than names, I do not find that the defendant's rights were violated.

## II

¶ 72. Measures to shield juror information not only implicate the defendant's rights, but also contradict the presumption of openness that defines the American judicial system. The selection of jurors has always presumptively been a public process.

¶ 73. Since the sixteenth century jurors have been selected in public. *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 507 (1984). It is not surprising that trials in colonial America adopted the presumptive openness of the jury selection process that developed in England. *Id.* at 508. This openness "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Id.* at 508.

¶ 74. As the majority noted, the empanelling of an anonymous jury is a relatively recent phenomenon. Majority op., ¶ 12. Although courts have recognized that the use of an anonymous jury may be appropriate in limited circumstances, they have been understandably narrow in defining those circumstances. "The use of an anonymous jury will remain a device of last resort . . . ." *Krout,* 66 F.3d at 1427. It is considered to be a "drastic measure." *Sanchez,* 74 F.3d at 564.

¶ 75. A few years ago this court unanimously rejected a petition for an administrative rule governing juror confidentiality. The petition provided that jurors be referred to only by number and that no personal juror identifying information could be elicited during voir dire. It allowed that a party may, after the trial, petition the court for access to personal juror identifying information for purposes of developing a motion for a new trial.

¶ 76. The breadth of such a proposal and its effect on our tradition of public trials were apparent to many who appeared in opposition to the proposal at the public hearing. The State Bar of Wisconsin was one of the groups that appeared in opposition to the petition.[1] It cautioned that an anonymous jury should be used only

[1] Petition No. 98–08, *In the Matter of the Amendment of Supreme Court Rules: (Proposed) SCR 73.04: Juror Confidentiality,* Public Hearing November 17, 1998; Order Denying Petition January 19, 1999. Groups that appeared or registered in opposition to the proposed rule include the Wisconsin District Attorneys Association, the Judges of Milwaukee County, the Milwaukee Bar Association, the Wisconsin Association of Trial Lawyers, the Wisconsin Newspaper Association, the Wisconsin Broadcasters Association, and the Freedom of Information Council.

518

in "an extremely rare circumstance." (Statement of State Bar of Wisconsin filed Nov. 16, 1998, at 8.)

¶ 77. A trial is a public event and a public trial lies at the foundation of our legal tradition. The public trial is rooted in the "principle that justice cannot survive behind walls of silence." *Sheppard v. Maxwell,* 384 U.S. 333, 349 (1966).

¶ 78. The majority's failure to distinguish between a numbers jury and an anonymous jury serves to dilute the jurisprudence on anonymous juries. It compounds this problem by applying an across-the-board "no harm, no foul" analysis of the harmless error rule thus serving to make the use of anonymous juries more commonplace.

¶ 79. The result of the majority's decision will stand in stark contrast to the federal courts of appeals decisions that have emphasized that use of an anonymous jury is the "last resort" and "a drastic measure."

¶ 80. It stands in stark contrast to the position of many who appeared at our public administrative hearing opposing the proposed rule, noting that if anonymous juries are to be used, they should be used only in extremely rare circumstances.

¶ 81. But, most importantly, the result of the majority's decision lies in stark contrast to the presumption of openness that defines our Anglo-American judicial tradition. The promise of a public trial by an impartial jury is a cornerstone of that tradition. The most common rationale for an anonymous jury is the protection of the jurors. A jury that sits in fear may not fill the expectation of impartiality. Yet, the use of an anonymous jury is a double-edged sword—it can give a sense of security or it can breed and feed fear. When fear is the result, then jury anonymity is a solution that exacerbates the problem it was intended to solve.

519

¶ 82. DIANE S. SYKES, J. *(concurring)*. The majority opinion and Justice Bradley's concurrence conclude that a "numbers jury" is not an "anonymous jury" as that term is understood in the case law. Majority op., ¶ 11; Justice Bradley's concurrence, ¶¶ 50, 53. I agree. No juror information was withheld from anyone in this case. The circuit court merely instructed the attorneys to refer to the jurors by number rather than name during voir dire, consistent with the circuit court's standard practice for cases of this type. The parties and the public had unrestricted access to all juror identifying information. As such, the anonymous jury case law does not apply.

¶ 83. The majority opinion nevertheless applies the anonymous jury case law, assumes that the presumption of innocence has been violated, and imposes the procedural requirements prescribed by the inapplicable anonymous jury cases, thereby prohibiting any voir dire by number in this state unless there is 1) an individualized determination of a need for juror protection; and 2) a precautionary instruction to protect against any negative reflection on the defendant. Majority op., ¶¶ 12–27. I cannot agree with this approach.

¶ 84. Voir dire by number does not implicate the presumption of innocence in the same way that the cases have assumed the use of an anonymous jury does. It has not been demonstrated—in this case or in the case law—that mere voir dire by number, without any restriction on access to juror information, has any serious adverse impact on the presumption of innocence. Any suggestion that it does is pure speculation. Indeed, the majority engages in no evaluation of this point at all, but merely extrapolates a presumption of innocence/due process violation from cases that in-

520

volved true anonymous juries rather than the far more innocuous practice of voir dire by number.

¶ 85. Our courthouses today are equipped with various security precautions—metal detectors at courthouse entrances, security glass in individual courtrooms, armed deputy sheriffs in the courtroom and in the courthouse hallways—all of which suggest at least some level of risk to the people who work and visit there, including the jurors. It cannot seriously be suggested that the presumption of innocence has necessarily been compromised by the use of any of these sorts of generalized protections. Certain special security precautions are sometimes taken in individual cases, such as posting extra deputies in the courtroom, without encumbering the presumption of innocence or requiring particularized due process justifications. Voir dire by number (if a circuit court chooses to use this technique) falls within this category of routine security measures, whether used as a general practice, in a certain class of cases, or case-by-case.

¶ 86. In my view, voir dire by number, without any other restriction on the scope of voir dire or the parties' or the public's access to juror identifying information, does not rise to the level of an encumbrance on the presumption of innocence so as to implicate the defendant's right to due process. In answer to the certified questions in this case, I would clarify that a "numbers jury" is not an "anonymous jury" within the meaning of *State v. Britt,* 203 Wis. 2d 25, 553 N.W.2d 528 (Ct. App. 1996) or the federal case law cited by the majority and concurring opinions.

¶ 87. Because voir dire by number is not the equivalent of an anonymous jury, the presumption of innocence has not been undermined and there is no need to impose any particularized due process prereq-

521

uisites upon a decision to conduct voir dire by number, either as a general practice or in an individual case. Accordingly, there is no error, and therefore no need to inquire into the applicability of harmless error analysis.