COURT OF APPEALS
DECISION
DATED AND FILED

December 16, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1262-CR**

Cir. Ct. No. **2015CF216**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHADWICK A. JOHNSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: JOSANN M. REYNOLDS, Judge. *Affirmed.*

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Chadwick Johnson appeals a judgment of conviction for substantial battery in violation of WIS. STAT. § 940.19(2) (2019-20)[1] and an order denying his postconviction motion. We affirm.

¶2    The charge in this case was based on a physical fight between Johnson and another man that occurred at a construction site where the men were working on August 14, 2014. The victim sought medical attention, and he was eventually diagnosed with a rib fracture. Following a trial, the jury found Johnson guilty of substantial battery. Johnson filed a motion for postconviction relief, which the circuit court denied without holding a hearing. We present additional background about the evidence introduced at trial and the trial and postconviction proceedings as needed below.

¶3    On appeal, Johnson argues that the circuit court erred when it denied his motion for a directed verdict, when it admitted evidence of his membership in a motorcycle club at trial, when it empaneled an anonymous jury, and when it denied his claims of ineffective assistance of counsel without a hearing. We address Johnson's arguments in turn.

I.  Denial of Directed Verdict

¶4    We begin with Johnson's argument that the circuit court should have granted his motion for a directed verdict because the evidence was insufficient. We address this issue first because if Johnson prevails it would have the effect of an acquittal, while the other issues he raises would lead only to a new trial.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶5 We affirm the verdict unless the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that no reasonable trier of fact could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Johnson's argument on appeal focuses on whether the State sufficiently proved that the battery caused the victim to suffer a fractured rib, which was necessary to prove substantial bodily harm.

¶6 The trial evidence showed that the victim obtained medical care twice. The first time was on the day after the battery, August 15, 2014. The doctors who examined the victim on August 15 did not testify at trial, but their records of the August 15 visit were received into evidence. Their narrative report from the August 15 visit stated that chest X-rays taken that day "reveal no acute bony abnormalities." The victim then obtained care again three days later, on August 18, 2014. This time, the doctor reviewed "dedicated" rib X-rays and concluded that a rib fracture was present. At trial, an expert for the State testified that the fracture was visible but difficult to detect in the chest X-rays taken on August 15.

¶7 On appeal, Johnson does not dispute the opinion of the second doctor that the August 18 rib X-rays show a fracture. Instead, he argues that the fracture may have occurred after the battery, between the first and second medical examinations. He focuses on the trial testimony of the State's expert about the August 15 chest X-rays. He argues that the expert's opinion that the fracture was visible in the August 15 X-rays was not certain enough to be considered proof beyond a reasonable doubt that the fracture was present on August 15, the day after the battery.

¶8     We reject this argument. We start from the proposition that, if there had been no August 15 X-ray, there is no dispute that the August 18 X-ray, together with the victim's testimony about continuous pain from the morning after the battery through August 18, would be sufficient to prove that the battery caused the fracture. That is so because there is no requirement that the State prove the existence of the injury with evidence that was obtained immediately after it occurred, or within any particular time period. The four-day window between the battery and the medical examination would not, by itself, significantly diminish the weight of this evidence.

¶9     The question then becomes, is the sufficiency of the August 18 X-rays fatally undermined by the August 15 X-rays? We conclude that it is not. We agree with Johnson that the absence of a fracture diagnosis on August 15 makes it at least reasonable to infer that the fracture was not present then. However, another reasonable inference is that the fracture *was* present on August 15, but just not easily visible in the chest X-ray. The jury apparently made the later inference, which was consistent with the opinion offered by the State's expert.

## II. Evidence of Motorcycle Club Membership

¶10     Johnson also argues that the circuit court erroneously exercised its discretion by permitting the State to introduce evidence that Johnson "was a member of the Outlaws motorcycle club."

¶11     By way of background, the State filed a pretrial motion seeking permission to introduce evidence that Johnson was a member of the motorcycle club. As the State explained, it anticipated that the defense would argue that the victim did not report the incident to police because he knew he was the instigator. Yet, according to the State, the victim explained that he did not report the battery

4

to police because he was afraid of retaliation, and evidence of Johnson's motorcycle club membership was necessary to explain the victim's fear of retaliation. The State's motion further claimed that the victim's "prior knowledge of the defendant's gang membership also is relevant to whether the victim would have instigated any confrontation with the defendant." We understand the State to have been arguing that a person would be less likely to instigate a fight with a known motorcycle club member, thus making it more likely that instead Johnson was the instigator.

¶12    Johnson opposed the State's motion, and he filed his own pretrial motion for an order excluding any evidence of his membership in the motorcycle club on the ground that "any potential relevance is outweighed by its prejudicial impact." As to the victim's claimed concern about retaliation, Johnson described that as "a position made untenable by numerous statements" made by the victim during the fight in which he allegedly threatened the motorcycle club and called its members "a bunch of pussies."

¶13    On appeal, Johnson asserts that the circuit court allowed "evidence of Mr. Johnson's alleged affiliation" with the club. However, the court's ruling was somewhat narrower than that. In its oral ruling, the court stated, "I just know that the statements that were made at the time [of the fight] are material as to what occurred and they're statements during the actual incident so they're admissible." The court does not appear to have approved the use of additional evidence, apart from statements made at the time of the fight, to prove Johnson's membership. That said, Johnson is correct that some of the evidence introduced at trial tended to suggest that Johnson was a member of the motorcycle club. For example, a witness to the fight testified that after the fight, when Johnson addressed him by

name, the witness asked Johnson how he knew his name, and Johnson replied, "because Outlaws know everything."

¶14 Although Johnson does not discuss on appeal the objection under WIS. STAT. § 904.03 that he made before the circuit court, we address that point, based on the information that was available to the court at the time of its pretrial decision. The question under that rule is whether the probative value of the evidence is outweighed by the danger of unfair prejudice. Here, evidence of the role that Johnson's potential club membership played in events surrounding the fight was highly probative to rebut the anticipated defense claim that the victim did not report the battery because he was the instigator. The potential for unfair prejudice lies in the possibility that the jury would use Johnson's club membership to draw an inference that he has a character that predisposes him to violence or instigating fights such as the one he was charged with here. However, the circuit court reasonably concluded that the high probative value of this evidence was not outweighed by any unfairness from the jury drawing that inference.

¶15 On appeal, Johnson argues that "to the extent it can be considered character evidence," evidence of his membership should not have been admitted to prove his character because it was not offered to rebut character evidence first offered by the accused. *See* WIS. STAT. § 904.04(1)(a). We reject this argument for two reasons. First, although Johnson frames this argument as being "to the extent" that this was character evidence, he does not actually develop a legal argument that it *is* character evidence to which that statute would apply. Second, the character evidence argument does not appear to have been preserved by an objection before the trial. That objection does not appear in Johnson's pretrial motion to exclude the evidence, and Johnson's oral argument did not expand the

6

legal theory to include a discussion of either character evidence or other-acts evidence.

¶16    Beyond that, Johnson argues that his club membership was not relevant to the victim's reason for not reporting the crime because other statements by the victim showed that the victim did *not* appear to be afraid of the club. Although Johnson made this argument at the pretrial hearing, it was not framed in terms of relevance, and is not properly framed in terms of relevance now. The existence of evidence that is contrary to the evidence being offered does not negate the relevance of the offered evidence. If it did, the only evidence that could be admitted would be undisputed evidence, which would be inconsistent with the purpose of a trial. Contrary evidence does not affect whether the offered evidence has "any tendency" to make a consequential fact more or less probable. *See* WIS. STAT. § 904.01 (definition of relevant evidence).

¶17    Finally, Johnson also asserts that club membership was not relevant because the victim testified at trial that he did not contact police because he did not want to seek help from others, but he did not mention fear of retaliation as a reason. In other words, the victim's trial testimony about his reason for not reporting the battery undercut the argument that the State gave before trial for admitting evidence of Johnson's club membership.

¶18    The fact that the trial testimony differed from the State's pretrial argument does not make the circuit court's pretrial decision erroneous. After that testimony, perhaps Johnson could have renewed his objection to the membership evidence and asked the court to reconsider the State's offered rationale for admitting it. However, that did not occur here, and there is no circuit court decision for us to review on that point. *State v. Mercado*, 2021 WI 2, ¶36, 395

Wis. 2d 296, 953 N.W.2d 296 (citing Wis. Stat. § 901.03(4) for the proposition that parties must preserve evidentiary objections for purposes of appeal).

### III. Use of Juror Numbers

¶19    Johnson argues that the circuit court erred by using numbers instead of names to refer to potential jurors during voir dire.  Johnson asserts that the request to use numbers was done at the request of the State, but the request actually appears to have come from bailiffs.

¶20    At a pretrial hearing, the State asked whether the circuit court was aware that a request had been made by the bailiffs for special security measures during this trial.  The court addressed some other matters, and then stated:  "I then have some concerns brought up by our bailiff's office with regard to jurors and contact with either Mr. Johnson or members of a gang affiliation."  The court stated that the only information it had about a possible gang involvement was contained in a June letter that it received.  That letter was from an unknown person, who gave a first name and last initial, and alleged various misdeeds by Johnson in connection with motorcycle club involvement.

¶21    The circuit court then stated that there had been a request, presumably by the bailiffs, that jurors be referred to by number rather than name.  The court asked if anyone objected to that practice.  Johnson objected on the ground that Johnson's gang involvement had not been established and a basis had not been shown for the jury number request.

¶22    The State responded with further information.  It stated that, on a date that was originally scheduled for jury selection, one of the State's witnesses received an anonymous telephone call that the prosecutor described as saying "we

know where you live and referencing something that would happen if [the witness] went to court the next day." The State also noted a case in which Johnson had a felony victim intimidation charge dismissed while pleading guilty to battery, and another case where Johnson had charges of aggravated battery and victim intimidation pending.

¶23 The circuit court eventually concluded: "So it is my inclination that we use juror numbers. If you have some authority that tells me I should not do that, you can get that to me by the 10th with everything else."

¶24 Johnson argues that his right to due process was violated by the circuit court's "failure to offer [him] an opportunity" to rebut the factual allegations in the letter, the telephone call, and what he refers to as "ex parte communications" between the bailiff's office and the court. He asserts that the court offered him only the opportunity to present legal authority.

¶25 This argument fails because Johnson cites no legal authority showing that the circuit court was required to "offer" him an opportunity to make a factual showing that he did not ask to make. If Johnson wanted to make such a showing, there was an adequate opportunity for him to ask for that chance. If Johnson means to suggest that the court's reference to the parties providing it with "authority" was an implied pre-emptive denial of a request to make a factual showing, that is not a reasonable interpretation of the court's remark. There is no basis to conclude that the court would not have entertained a request to rebut the facts offered in support of using juror numbers.

¶26 Johnson further argues that the circuit court had an inadequate factual basis to order the use of juror numbers. As to the first part of that argument, it appears that Johnson asks us to disregard the factual assertions that he

later attempted to rebut in his postconviction motion. We decline to commingle these two separate circuit court decisions. We review the court's decision to use juror numbers based on the information that was available to it at the time it made the decision.

¶27 Johnson argues that the circuit court erroneously exercised its discretion in applying the legal standard. A court may empanel an anonymous jury if there is a strong reason to believe that the jury needs protection and reasonable precautions are taken to minimize any prejudice to the defendant. *State v. Tucker*, 2003 WI 12, ¶15, 259 Wis. 2d 484, 657 N.W.2d 374.

¶28 Johnson argues that the facts presented to the circuit court do not show that there was a strong reason to believe the jury needed protection. He argues that the facts do not make a sufficient showing when measured against a list of factors described in *Tucker*. *Id.*, ¶22. However, the *Tucker* opinion refers to this list of factors as ones that "may" be considered. *Id.* We do not regard it as a checklist of factors that must be met in every case.

¶29 The remainder of Johnson's argument boils down to an assertion that the potential danger the circuit court was informed of in this case was not as extreme as the potential danger that existed in various published cases. However, Johnson does not give us any basis for concluding that those cases set some kind of floor above which the facts must rise to justify a protective measure. We conclude that it was reasonable for the circuit court to regard the facts identified above as a sufficiently strong reason to use juror numbers.

¶30 Finally, Johnson makes a similar argument about what he refers to as the circuit court's decision to have extra police officers in the corridor outside the trial. However, he does not point to anywhere in the record where the court made

such a decision. Indeed, when Johnson raised a concern about the officers during the trial, the court stated that it had not called them to protect the jury. After obtaining more information about the officers from a deputy, Johnson asked that the officers not be around and visible to the jurors, and the court instructed a deputy to arrange for that. In sum, there does not appear to have been a circuit court decision to add extra officers that we can review, and the court granted the remedy that Johnson asked for when the topic was raised at trial.

## IV. Ineffective Assistance of Counsel

¶31 Johnson's final set of arguments relates to ineffective assistance of counsel. To establish ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that such performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both components of the analysis if defendant makes an inadequate showing on one. *Id.* at 697.

¶32 Here, the circuit court denied Johnson's postconviction motion without an evidentiary hearing. In such circumstances, we consider whether he was entitled to such a hearing because his motion alleged facts which, if true, would entitle him to relief. *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). This is a question of law we review without deference to the circuit court. *Id.*

¶33 Johnson argues that his trial counsel was ineffective because he did not call as trial witnesses the two doctors who did not diagnose Johnson's rib fracture when they examined him the day after the battery. In his brief, Johnson asserts that the doctors "would have had to testify consistently with their reports that no fracture was present on that date." However, Johnson does not explain

why they would have "had to" do so if they were presented with the later X-rays and the opinion of the State's expert that the first X-rays may have shown the fracture.

¶34 Instead, Johnson asserts that "on information and belief, neither doctor would change their opinion" based on the additional information. Johnson does not present any affidavit or other basis for him to have such a belief, which appears to be based on hopeful speculation. In the absence of a reason to believe that the doctors would have testified at trial that a fracture was not present on August 15, Johnson has not sufficiently alleged that his attorney's performance was deficient by not calling them as witnesses.

¶35 Johnson argues that his trial counsel was ineffective by not making a hearsay objection when the victim testified that he was told, after the second examination, that he had a rib fracture. As discussed above, that diagnosis was also presented to the jury through other methods that are not disputed on appeal. As a result, Johnson's motion does not show deficient performance because an objection to his testimony would have been a pointless interruption, and it does not show prejudice because his hearsay testimony was merely duplicative of other evidence that was properly admitted.

¶36 Finally, Johnson argues that his trial counsel was ineffective by not attempting to rebut the factual allegations that led the circuit court to use juror numbers. For purposes of this issue, we assume that if counsel had made such an effort, Johnson would have been able to persuade the court not to use juror numbers.

¶37 We turn, then, to whether use of juror numbers was prejudicial. To demonstrate prejudice, the defendant must show a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*

¶38 Here, the circuit court minimized the prejudicial effect by telling the jury that "in this courtroom," the normal procedure was to identify jurors by number rather than by name. In addition, it is unlikely that the jury would have given significant weight to this one facet of voir dire after hearing from several witnesses and having the opportunity to evaluate their testimony and credibility. We are satisfied that there is no reasonable probability that use of juror names would have changed the outcome.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.