2013 CO 22

**Rene PEREZ, Petitioner:**

**v.**

**The PEOPLE of the State of Colorado, Respondent**

**Supreme Court Case No. 10SC616**

Supreme Court of Colorado.

April 8, 2013

JUSTICE EID delivered the Opinion of the Court.

¶1 We granted certiorari in this case, along with *Rizo v. People*, 2013 CO 23, 302 P.3d 232, and *Robles v. People*, 2013 CO 24, 302 P.3d 229, to determine whether a trial court may refer to prospective jurors by number, instead of by name, in open court as a matter of routine policy.[1]

¶2 In this case, the trial court shared prospective jurors' names and other identifying information with the defendant and the prosecution, but referred to the jurors by number, rather than by name, in open court.

---

1. Specifically, we granted certiorari on the following issue:

   Whether the trial court violated petitioner's fundamental rights to a fair and public trial, to the presumption of innocence, and to equal protection, and violated long-standing federal case law, by arbitrarily ruling that the lawyers had to refer to the jurors by number rather than name and by seating an anonymous jury without any justification other than the court's routine policy.

The defendant, Rene Perez, argues that the trial court's practice created an "anonymous jury," and that such a jury should be assessed under the "anonymous jury" framework devised by the federal courts. He concludes that, because the trial court in this case failed to follow that framework–in particular, because it failed to demonstrate "good cause" for its practice–his right to a fair trial, including the presumption of innocence, was violated.

¶ 3 We disagree. Perez did not have an "anonymous jury" as that term has been defined by federal case law. Unlike in those cases, here the prospective jurors' identifying information was shared with the parties, including the defendant. We therefore find the anonymous jury framework inapplicable. Instead, we treat this case for what it is – a claim that the practice undermined the presumption of innocence because it implied that defendant was possibly guilty or dangerous.

¶ 4 We hold that no such implication occurred here. The prospective jurors' identifying information was shared with Perez, and the jurors were so informed. In addition, the trial court explained that referring to jurors by number, rather than by name, was a general practice that was adopted to protect jurors' privacy. Therefore, there was no reason for jurors to infer that the court's practice was anything other than a general policy adopted to protect jurors' privacy that had nothing to do with Perez, or his possible guilt or dangerousness. Finally, the jury was instructed on the presumption of innocence prior to deliberations. We thus conclude that the fairness of the trial, including the presumption of innocence, was not undermined by the trial court's practice, and affirm the court of appeals.

## I.

¶ 5 The victim in this case called the police to report that her friend, Martha Rizo, and Rizo's boyfriend, Rene Perez, sexually as-

saulted her while the three were playing a drinking game. The Weld County District Attorney charged Perez with sexual assault, pursuant to section 18–3–402(1)(a), C.R.S. (2012), and alleged a sentence enhancer, pursuant to section 18–3–402(5)(a)(I), C.R.S. (2012), because another person (Rizo) physically aided or abetted him in the assault. Rizo was tried separately.[2]

¶ 6 During pre-trial conference, the trial court alerted the parties to its practice of referring to jurors by number instead of name. The court asked the parties to refer to jurors by their assigned juror number when they were in the gallery and by their seat number when they were seated in the jury box. Defense counsel objected, arguing that the practice would imply Perez's guilt. The court overruled the objection, explaining that it had used the practice in its last twenty jury trials, had received consistently positive reports from jurors, and had no concern that the practice implied guilt.

¶ 7 Before the trial court addressed any juror by number, it issued the following explanation of its practice to the jury: "[I]t's my policy, in order to respect your privacy, to not refer to you by your name. My experience, talking to jurors, are [sic] that they appreciate the fact that we respect their privacy. With that said, we are going to be referring to you by your three-digit juror number." The potential jurors had already filled out a two-sided jury questionnaire that included their names and stated at the top, "This information will remain *confidential* and will be known only by the court and the parties to this case." Both parties received the completed jury questionnaires, which provided the jurors' names and other identifying information. The trial court instructed the jury on the presumption of innocence before allowing them to deliberate.[3]

¶ 8 The jury convicted Perez of sexual assault and found that the sentence enhancer applied. The court sentenced Perez to twen-

---

**2.** Rizo's conviction is the subject of the appeal in the companion case we decide today. *See Rizo v. People,* 2013 CO 23, 302 P.3d 232.

**3.** In part, Instruction No. 5 stated as follows: "Every person charged with a crime is presumed

innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all of the evidence, you are then convinced that the defendant is guilty beyond a reasonable doubt."

ty-four years to life in prison. The court of appeals affirmed his conviction and sentence in an unpublished opinion. *People v. Perez*, No. 08CA2296, 2010 WL 2956070 (Colo.App. July 29, 2010) (not selected for official publication).

¶ 9 Because we find that this was not an anonymous jury and that Perez's right to a fair trial, including the presumption of innocence, was not undermined, we affirm the judgment of the court of appeals.

## II.

¶ 10 Beginning in the 1970s, federal courts began using anonymous juries in organized crime cases in order to protect jurors. *See, e.g., United States v. Barnes*, 604 F.2d 121 (2d Cir.1979). To create anonymous juries, parties would select jurors "from a venire whose members' identifying information—such as names, occupations, addresses, exact places of employment, and other such facts—ha[d] been withheld from the parties." *United States v. Morales*, 655 F.3d 608, 620 (7th Cir.2011). Federal statute allows federal district courts to keep the names of jurors "confidential in any case where the interests of justice so require." 28 U.S.C. § 1863(b)(7).

¶ 11 The federal circuit courts of appeals became concerned with this practice for two reasons. First, using an anonymous jury "potentially deprives defendants of information that could be used in making juror selections during voir dire." *Morales*, 655 F.3d at 620 (citing *United States v. Mansoori*, 304 F.3d 635, 650 (7th Cir.2002)). Second, "[a]n anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence." *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir.1994).

¶ 12 Eventually, the courts of appeals developed a test that must be satisfied in order for a federal trial court to employ an anonymous jury. All the circuits to consider anonymous juries have adopted formulations of the following test: Courts may not impanel anonymous juries unless "(1) there is strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised absent anonymity; and (2) reasonable safeguards have been adopted to minimize the risk that the rights of the accused will be infringed." *United States v. Dinkins*, 691 F.3d 358, 372 (4th Cir.2012).[4] All the federal circuit courts that have considered the issue review a trial court's decision to use an anonymous jury for abuse of discretion. *Id.* at 371.

¶ 13 More recently, reviewing courts have seen variations on the typical anonymous jury. One development involves referring to jurors by number in open court but revealing all identifying information, including their names, to the parties. While the Fourth Circuit in dicta wrote that the practice represents "[a] lesser degree of anonymity," *id.*, other courts that have considered this type of jury have not called it "anonymous." For instance, the Eighth Circuit, which appears to be the only federal court to hear a case on this type of jury, has ruled that courts do not abuse their discretion in employing this practice. *United States v. Peoples*, 250 F.3d 630, 635 (8th Cir.2001); *see also United States v. Lee*, 886 F.2d 998, 1001–02 (8th Cir.1989) (finding no prejudice when defense counsel had jurors' names). Similarly, some state courts have found that this practice does not amount to an anonymous jury and should not be analyzed as such. *See, e.g., People v. Goodwin*, 59 Cal.App.4th 1084, 69 Cal. Rptr.2d 576, 579–80 (1997); *People v. Williams*, 241 Mich.App. 519, 616 N.W.2d 710, 713 (2000). However, one state court, while recognizing the practice as something different than an anonymous jury, has applied the federal anonymous jury test to

**4.** *See also United States v. DeLuca*, 137 F.3d 24, 31 (1st Cir.1998); *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir.1991); *United States v. Scarfo*, 850 F.2d 1015, 1023 (3d Cir.1988); *United States v. Krout*, 66 F.3d 1420, 1427 (5th Cir. 1995); *United States v. Lawson*, 535 F.3d 434, 439 (6th Cir.2008); *United States v. Morales*, 655 F.3d 608, 620–21 (7th Cir.2011); *United States v. Darden*, 70 F.3d 1507, 1532 (8th Cir.1995); *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir.2003); *United States v. Ross*, 33 F.3d 1507, 1520 (11th Cir.1994); *United States v. Moore*, 651 F.3d 30, 48 (D.C.Cir.2011).

"numbers only" juries, although the court ultimately decided that any error would be harmless. *See State v. Tucker*, 259 Wis.2d 484, 657 N.W.2d 374, 380 (2003); *but see id.* at 392 (Sykes, J., concurring) (finding anonymous jury framework inapplicable where names and identifying information were given to defendant).[5] Perez argues that his jury should be treated as an anonymous jury, that the federal anonymous jury framework should be applied, and that the framework would not be satisfied in this case because there was no showing that safety or other concerns required the use of an anonymous jury.

■ ¶ 14 We disagree with Perez's suggested approach. Perez did not have an anonymous jury. He received all identifying information, including the names, of the voir dire panel. Therefore, the framework for evaluating an anonymous jury is inapplicable. Indeed, it is inapplicable on its own terms, as it requires that the trial court make a finding that "disclosure of identifying information about the venire members may jeopardize their lives or safety." *Dinkins*, 691 F.3d at 377. Here, the identifying information was disclosed to the parties.

■ ¶ 15 Rather than employing the anonymous jury framework, we assess Perez's claim for what it is–an assertion that the presumption of innocence was undermined by the court's use of numbers, instead of names, to refer to prospective jurors.[6] *See*

*Williams*, 616 N.W.2d at 713 (holding that, when the right to effective voir dire has not been compromised, a successful defendant must show "that the presumption of innocence has been compromised"). We conclude that the trial court's practice did not undermine the presumption of innocence.

■ ¶ 16 "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *see also People ex rel. Juhan v. Dist. Court*, 165 Colo. 253, 257, 439 P.2d 741, 743–44 (1968) (considering the presumption of innocence to be one of the "fundamental principles of law applicable to criminal cases which have been so universally accepted and applied in this country as to have become component parts of our understanding of the term 'due process of law'"). Perez argues that the presumption of innocence was undermined in his case because referencing jurors in open court by number, instead of by name, implies that the jurors have to be protected from the defendant in some way, thereby suggesting possible guilt or dangerousness.

¶ 17 We conclude that no such inference could have been drawn in this case. The trial court told the juror panel the following: "[I]t's my policy, in order to respect your privacy, to not refer to you by your name. My experience, talking to jurors, are [sic]

---

5. *Tucker* is the only case that has been cited to us that applied the federal anonymous jury test to an instance in which jurors were referred to by number during voir dire but where the defendant received the jurors' names and identifying information, although the court ultimately found any error to be harmless. 657 N.W.2d at 383. Various other state courts have applied the federal anonymous jury test in circumstances in which jurors' information was not shared with the defendant or when other uniquely prejudicial circumstances arose. *See, e.g., State v. Brown*, 280 Kan. 65, 118 P.3d 1273, 1281–82 (2005) (applying the federal anonymous jury test when, after voir dire was conducted using juror names, the court informed the jury that because of safety concerns the court would begin to identify jurors by number); *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172, 194, 196 (2010) (applying the federal anonymous jury test when the court referred to jurors by number and ordered defense counsel not to reveal the names of potential

jurors to defendant); *State v. Rogers*, 352 Or. 510, 288 P.3d 544, 558, 559–60 (2012) (applying the federal anonymous jury test when the court gave jurors the option of withholding their names and addresses, referred to prospective jurors by number, and informed most of the jurors that the attorneys, rather than the parties, would be given the jurors' names). As noted below, because such information was shared with the defendant in this case and the jurors were so informed, and because the trial court's conduct did not alert the jury that their safety was at issue, we find these three cases inapposite.

6. Unlike in the anonymous jury context, Perez faced no danger of conducting an ineffective voir dire, as he possessed the prospective jurors' names and identifying information. Thus, the only remaining claim is whether the presumption of innocence was impaired.

that they appreciate the fact that we respect their privacy. With that said, we are going to be referring to you by your three-digit juror number." The court thus presented the issue of referencing jurors by number as its general practice. Importantly, this general practice did not suggest anything in particular with regard to this defendant. *See Williams*, 616 N.W.2d at 524 (holding that because "[t]here is no suggestion that jurors understood the use of numbers rather than names to be anything out of the ordinary," nor any suggestion "that defendant's trial was being handled in a special way," there was no "implication that he was generally dangerous or guilty as charged").

¶ 18 Moreover, the rationale given for the practice–that it was intended to protect the jurors' privacy–had nothing to do with defendant's possible guilt or dangerousness, or the need to protect their safety. *See, e.g., Peoples*, 250 F.3d at 635 (noting that the trial court told jurors that they were being referred to by number "to reduce the possibility that the media or others interested in the issues of this case might try to contact them"). Indeed, the court indicated at a status conference that it had used the practice in its last twenty jury trials, and had received consistently positive reports from jurors. Thus neither the rationale for, nor the applicability of, the practice suggested anything about this particular defendant.

¶ 19 In addition, the juror questionnaire made it clear to jurors that the defendant would be receiving prospective jurors' names and identifying information, stating that the information would be kept confidential except that it would be available to "the court *and the parties to this case.*" (Emphasis added). Because there was no suggestion that information was being kept from Perez, no inference could be drawn that there was any need to withhold jurors' information from him.

Finally, the trial court instructed the jury on the presumption of innocence prior to deliberations.

■ ¶ 20 In sum, there was no reason for jurors to infer that the court's practice was anything other than a general policy adopted to protect jurors' privacy that had nothing to do with Perez himself, or his possible guilt or dangerousness. Perez's right to a fair trial, including the presumption of innocence, was not undermined, and therefore the trial court committed no error by referring to the jurors by number.[7] Although we find that the practice of referring to jurors by number, rather than by name, does not undermine the presumption of innocence, we note that the practice is subject to future rule or statutory development.

### III.

¶ 21 Because we conclude that this was not an anonymous jury and that Perez's right to a fair trial, including the presumption of innocence, was not undermined, we affirm the judgment of the court of appeals.

CHIEF JUSTICE BENDER dissents.

CHIEF JUSTICE BENDER, dissenting.

¶ 22 The majority holds that the accused's due process right to a fair trial, which includes the presumption of innocence, is not violated when jurors are selected anonymously. The majority reasons that where the parties have been given appropriate juror name and identifying information, the need to protect juror privacy trumps the accused's guarantee of a fair trial. Although the need to protect a juror's privacy is an important concern, absent special facts germane to the particular case, it should not take precedence over the accused's fundamental right to a fair trial, which includes the presumption of inno-

---

7. For similar reasons, we reject Perez's equal protection argument. "The threshold question in any equal protection challenge is whether the [policy] results in dissimilar treatment of similarly situated individuals." *Duran v. Indus. Claim Appeals Office of Colo.*, 883 P.2d 477, 481 (Colo. 1994). Because Perez received the same treatment as other defendants in terms of the trial court's policy of referring to jurors by number, instead of by name, there was no dissimilar treat-

ment. We also reject Perez's public trial claim. Perez cites *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), for the proposition that the jury selection process must be open. However, there is nothing in *Press–Enterprise* to suggest that a defendant has a constitutional right to have prospective jurors' names read into the record.

cence. Referring to jurors during the selection process by number telegraphs the not-so-subtle message to the jury that the accused is dangerous and a threat to society. Instructions by the court to the contrary rarely undo the damage done to an accused's right to a fair trial, and this practice should be resorted to only when absolutely necessary to protect juror safety and private information. Anonymous juries should be the rare exception to the rule requiring full jury identification. The trial court stated that referring to jurors by number was its routine practice and here, it was done without providing reasons specific to this case. In my view, the use of an anonymous jury undermined Perez's right to a fair trial and unconstitutionally impacted his fundamental right to have the jury accord him the full protections of the presumption of innocence to which he was entitled. Hence, I respectfully dissent and would reverse Perez's conviction and remand for a new trial.

## I.

¶ 23 At a pretrial conference, the trial court advised the parties that it was the court's routine policy to refer to jurors by number. Defense counsel objected, in part because the practice of referring to jurors by number was only appropriate when there had been "alleged threats to witnesses or jurors," and this practice implied to the jurors that Perez was dangerous. This objection was overruled. Perez and his attorneys received juror questionnaires that identified jurors by name and contained juror background information. During the selection process, the trial court and counsel both referred to each

juror by number because, as the trial court stated, referring to jurors by number was needed to respect jurors' privacy. The court gave no other reason for this practice.

## II.

¶ 24 American jurisprudence places a fundamental emphasis on the presumption of innocence as necessary to an accused's due process guarantee of a fair trial. "Our criminal justice system is based upon the profound principle that a defendant is entitled to the presumption of innocence." *People v. Martinez*, 970 P.2d 469, 472 (Colo.1998). The presumption of innocence is "the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (quoting *Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895)).[8] This fundamental concept must not be diminished. "Honoring the presumption of innocence is often difficult; sometimes we must pay substantial social costs as a result of our commitment to the values we espouse. But at the end of the day the presumption of innocence protects the innocent; the shortcuts we take with those whom we believe to be guilty injure only those wrongfully accused and, ultimately, ourselves." *United States v. Salerno*, 481 U.S. 739, 767, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (Marshall, J., dissenting).

¶ 25 "An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected"

**8.** The following represents a modest sample: The burden of proof in criminal cases "provides concrete substance for the presumption of innocence." *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "One of the rightful boasts of Western civilization is that the State has the burden of establishing guilt solely on the basis of evidence produced in court and under circumstances assuring an accused all the safeguards of a fair procedure." *Irvin v. Dowd*, 366 U.S. 717, 729, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (Frankfurter, J., concurring). The notion that it is the duty of the government to establish guilt beyond a reasonable doubt is "basic in our law" and is a "requirement and a safeguard of due process of law." *Leland v. Oregon*, 343 U.S. 790, 803, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952)

(Frankfurter, J., dissenting). In order to overcome the presumption of innocence, a defendant must be "found guilty via a process replete with substantial procedural safeguards." *Utz v. Cullinane*, 520 F.2d 467, 478 (D.C.Cir.1975). Society is willing to take the calculated risk that a guilty person will be acquitted because it regards the conviction of innocent people so objectionable. *Reynolds v. United States*, 238 F.2d 460, 463 (9th Cir.1956). The concept of the presumption of innocence "is not to be minimized or to be denied to a defendant." *People v. Hill*, 182 Colo. 253, 257, 512 P.2d 257, 259 (1973). The presumption of innocence is one of the "basic concepts" fundamental to a fair criminal trial. *People ex rel. Juhan v. Dist. Court*, 165 Colo. 253, 257, 439 P.2d 741, 743 (1968).

and undermines the accused's right to the presumption of innocence. *United States v. Ross,* 33 F.3d 1507, 1519 (11th Cir.1994).[9] Most federal courts hold that a court may not impanel an anonymous jury unless the court first finds there is a specific reason rooted in the case before it and concludes that the jury needs protection from interference or harm. After making such findings, the trial court must instruct the jury to protect the accused's right to the presumption of innocence and a fair trial. *See, e.g., United States v. Dinkins,* 691 F.3d 358, 372 (4th Cir.2012), *cert. denied,* — U.S. ——, 133 S.Ct. 1278, 185 L.Ed.2d 214 (2013).[10] Even then, explanations concerning the use of an all-numbers jury pose a challenging task to protect the defendant's due process rights. "It is difficult to conceive of instructions which could be truthful and efficacious" in informing jurors that they should not infer anything about the defendant's guilt from being identified by number. *State v. Accetturo,* 261 N.J.Super. 487, 619 A.2d 272, 273 (Law Div. 1992).

¶ 26 The majority draws upon a line of cases to support its view that when the parties receive jurors' identifying information, referring to jurors by number during jury selection does not violate an accused's right to a fair trial.[11] Maj. op. ¶ 13. In other words, a numbers jury is not the same practice as having a completely anonymous jury. However, there exists a contrary view of authorities that condemn this practice because it violates the accused's presumption of innocence and guarantee of a fair trial. These jurisdictions make no distinction between the concept of a numbers jury and a completely anonymous jury because either

way harm to the presumption of innocence occurs. *See Tucker,* ¶ 11 ("[I]f restrictions are placed on juror identification or information, due process concerns are raised.").

¶ 27 The highest courts of Oregon, Wisconsin, Kansas, and Nebraska have all held that absent compelling reasons, referring to jurors by number during jury selection endangers the accused's presumption of innocence. These courts follow the procedure that trial courts must make an individualized determination that the jury needs protection whenever a court withholds any juror information because "[s]erious concerns regarding a defendant's presumption of innocence are raised when juror information is restricted." *Tucker,* ¶¶ 18–21; *see also State v. Brown,* 280 Kan. 65, 118 P.3d 1273, 1281 (2005) (withholding juror information undermines a defendant's presumption of innocence and his right to a fair trial); *State v. Rogers,* 352 Or. 510, 288 P.3d 544, 562 (2012) (stating that a "generalized desire to protect the anonymity of all jurors in all cases" is inadequate to justify empaneling a numbers jury, and the trial court must make findings of fact about a particular case before referring to a jury by number) (quoting *State v. Sundberg,* 349 Or. 608, 247 P.3d 1213, 1221 (2011)); *Sandoval,* 788 N.W.2d at 195 ("[T]here is a risk that potential jurors will interpret the anonymity as an indication that the court believes the defendant is dangerous.").

¶ 28 As one commentator has noted: "[I]f jurors conflate anonymity with a criminal defendant's dangerousness, the right to a fair trial is eviscerated."[12] This observation of human nature rings true. The use of anony-

9. Some courts have made a distinction between a completely "anonymous jury" and a "numbers jury." A completely anonymous jury is one selected whose identifying information has been withheld from the parties. *United States v. Morales,* 655 F.3d 608, 620 (7th Cir.2011). A "numbers jury" is one in which the names are withheld during the jury selection process but not from the parties. *See State v. Tucker,* 2003 WI 12, ¶ 11, 259 Wis.2d 484, 657 N.W.2d 374; *State v. Sandoval,* 280 Neb. 309, 788 N.W.2d 172, 195 (2010).

10. *See also United States v. DeLuca,* 137 F.3d 24, 31 (1st Cir.1998); *United States v. Paccione,* 949 F.2d 1183, 1192 (2d Cir.1991); *United States v.*

*Krout,* 66 F.3d 1420, 1427 (5th Cir.1995); *United States v. Talley,* 164 F.3d 989, 1001 (6th Cir. 1999); *United States v. Shryock,* 342 F.3d 948, 971 (9th Cir.2003); *Ross,* 33 F.3d at 1520; *United States v. Edmond,* 52 F.3d 1080, 1090 (D.C.Cir.1995) (per curiam).

11. *See People v. Goodwin,* 59 Cal.App.4th 1084, 69 Cal.Rptr.2d 576, 579–80 (1997); *People v. Williams,* 241 Mich.App. 519, 616 N.W.2d 710, 713 (2000).

12. Christopher Keleher, *The Repercussions of Anonymous Juries,* 44 U.S.F.L.Rev. 531, 532 (2010).

mous juries telegraphs implicitly—if not explicitly—that the accused is dangerous, which in turn undermines the accused's right to the presumption of innocence and the accused's due process guarantee of a fair trial.[13] Hence, I respectfully dissent and would reverse Perez's conviction and remand for a new trial.

¶ 1 We granted certiorari in this case, along with *Perez v. People*, 2013 CO 22, 302 P.3d 222, and *Rizo v. People*, 2013 CO 23, 302 P.3d 232, to determine whether a trial court may refer to prospective jurors by number, instead of by name, in open court as a matter of routine policy.[1]

---

13. "The empanelment of an anonymous jury triggers due process scrutiny because this practice is likely to taint the jurors' opinion of the defendant, thereby burdening the presumption of innocence." *Com. v. Angiulo*, 415 Mass. 502, 615 N.E.2d 155, 171 (1993). "The contention that juror anonymity poses no danger to the presumption of innocence is, to say the least, disingenuous." Abraham Abramovsky & Jonathan I. Edelstein, *Anonymous Juries: In Exigent Circum-*

*stances Only*, 13 St. John's J. Legal Comment 457, 470 (1999).

