COLORADO COURT OF APPEALS
 2015 COA 166
 
 

Court of Appeals No. 12CA2538
Arapahoe County District Court No. 10CR2839
Honorable John L. Wheeler, Judge

The People of the State of Colorado,
Plaintiff-Appellee,
v.
Luis Enrique Guzman-Rincon,
Defendant-Appellant.
JUDGMENT REVERSED, SENTENCE VACATED,
AND CASE REMANDED WITH DIRECTIONS
Division IV
Opinion by JUDGE GRAHAM
Román and Ney*, JJ., concur
Announced November 19, 2015

Cynthia H. Coffman, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee
Douglas K. Wilson, Colorado State Public Defender, Jon W. Grevillius, Deputy Public Defender, Denver, Colorado, for Defendant-Appellant
*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.
 
¶1          Defendant, Luis Enrique Guzman-Rincon, appeals the jury verdicts finding him guilty of six counts of attempted extreme indifference murder (crime of violence). Under the circumstances presented in this case, we conclude that defendant’s Sixth Amendment right to counsel and his Fourteenth Amendment right to be present at critical stages of the proceedings were violated. Accordingly, we reverse defendant’s conviction, vacate his sentence, and remand for a new trial.
I. Background
¶1          On December 6, 2010, the victim and her friends were standing across the street from Aurora Central High School. The victim saw a black sedan “race” down the street, make a u-turn, and drive back towards the group. As the victim jumped out of the way of the sedan, the vehicle’s left rear passenger fired a single shot from the car. The bullet struck the victim in the spine, paralyzing her.
¶2          Defendant was tried on six counts of attempted extreme indifference murder (crime of violence)' after he was identified by one of the witnesses as the shooter. The prosecution alleged at trial that defendant was a gang member and was targeting members of a rival gang at the time of the shooting.
A. Decision to Sequester the Jury
¶3          On the fifth day of trial, the prosecutors requested an ex parte audience with the court. In chambers, and outside the presence of defendant and defense counsel, the prosecutors disclosed that the investigating officer had received information from a confidential informant (CI) that defense counsel had given defendant’s family access to recorded witness interviews.[2] According to the prosecutors, the CI had reported that gang members had watched those interviews and created a “hit list” including the witnesses, investigating officer, and prosecutors. The prosecutors also said that the CI had warned the officer to be on the lookout for a suspicious vehicle in the courthouse parking lot and not to allow the jurors to be followed on the way home.
¶4          The prosecutors alleged defense counsel acted unethically in providing defendant’s family with the interviews and that he should not be told “about this information” to protect the identity of the CI. The prosecutors then suggested that the court sequester the jurors for their protection and tell the jurors that sequestration was necessary “because of the publicity on the case, or because we’re worried there’s going to be some sort of outside tampering.”
¶5            The trial court agreed that sequestration was necessary to protect the jurors. The court determined it would be improper to suggest to the jurors they were in danger, and agreed to tell the jurors they were being sequestered based on publicity and the temptation to do outside investigation.
¶6          After the defense presented its final witness for the afternoon, the court informed defendant and defense counsel of the sequestration. The court did not tell defendant or counsel that there was a credible threat, but rather focused on the publicity the case had received. Defense counsel requested that the court “inform [him] as to the factual basis regarding” the sequestration “so [he is] not left in the dark.” The court said “[w]e can have that discussion after” it informed the jury, but no such discussion is in the record.
B. Decision to Inform the Jury of the Threat
¶7          The next day, the jury began deliberations. At the end of the day, the jury had not reached a verdict. Therefore, a second night of sequestration was necessary. Before leaving for the night, the jury submitted the following question to the court:
There is a concern among the jury that if there is a threat to us and our family that leaving our cars in the parking lot overnight for two nights could be a concern. Can we be identified because of our cars in the lot, same spot, 2 nights in a row?
¶8          Because it was early evening and the jury had been deliberating for several hours, the prosecutors, defense counsel, and defendant were no longer in the courthouse. The court telephoned all counsel to discuss the question and, over defense counsel’s objection, decided to inform the jury of the threat.[3]
¶9          After the telephone conversation, without the attorneys or defendant present, the court told the jurors:
Based on your last question, I want to tell you why we’ve taken these extraordinary procedures.
Everything that I told you is absolutely true about the fact that there had been inquiries concerning publicity in this matter, and about the issue involving the temptation you might have concerning the Internet. Those things are true. But those exist in many cases.
Based on what you indicated in your question, we have taken these extraordinary precautions because there was an unidentified, fairly undifferentiated threat that was reported about this case. I will tell you that there was no identification of any juror, nothing specific to any juror. The only concern that we had about jurors was about you leaving here, and possibly being identified as you left -- people who might be in here recognized you as you left.
. . .
So we are going as far as we possibly can in an abundance of caution despite the . . . I call it “an undifferentiated threat,” because it had nothing to do with any of you personally at all. It merely was a threat to the case.
. . .
So I can’t tell you that there was not a concern. What I can tell you is whether the concern, on a scale of 1 to 100 was a 1 or 99. I can tell you, regardless of where it was, exactly the same things would have been done that we’re doing. And, like I said, I consider this lower on the scale because, as far as the jury is concerned, it is totally undifferentiated; had nothing to do with anyone in particular. And as far as I’m aware, other than the family members who have been here, there has been no one else in this courtroom. Now, as of yesterday, we assured no one else was in this courtroom. So that’s what we have.
¶10          The court also informed the alternate jurors of the threat and dismissed the jury for the evening.
¶11          The next morning the jury informed the court that it was unable to reach a unanimous decision. The court then gave the jurors a modified Allen instruction[4] and sent them back for further deliberations. Later that day, the jury convicted defendant of all charges.
¶12          Defendant was sentenced to thirty-five years in the custody of the Department of Corrections (DOC) for the attempted extreme indifference murder count relating to the paralyzed victim, and concurrent terms of sixteen years in the custody of the DOC for the remaining counts.
II. Right to Counsel
¶13          Defendant contends the court’s ex parte communications with the prosecutors and the jurors violated his Sixth Amendment right to counsel at all critical stages of his trial. We agree.
A. Standard of Review
¶14          We review whether a defendant has been denied representation at a critical stage of the proceedings de novo. Cf. Key v. People, 865 P.2d 822, 825-26 (Colo. 1994); see United States v. Washington, 11 F.3d 1510, 1517 (10th Cir. 1993) (“We review . . . the legal question of . . . whether the presentence interview was a critical stage of the proceedings de novo.”).
¶15          “In cases where there has not been a total deprivation of the right to counsel, Colorado courts have applied a constitutional harmless error standard.” People v. Fritts, 2014 COA 103, ¶11 (citing Key, 865 P.2d at 826-27; People v. Moore, 251 P.3d 451, 454 (Colo. App. 2010)).[5]
¶16          “[W]e reverse if ‘there is a reasonable possibility that the [error] might have contributed to the conviction.’” Hagos v. People, 2012 CO 63, ¶11 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)); accord People v. Cardenas, 2015 COA 94M, ¶23. “Under this standard, the prosecution has the burden of demonstrating that the ex parte [communication] did not contribute to the defendant’s conviction.” Key, 865 P.2d at 827; see Hagos, ¶11 (“[T]he State bears the burden of proving the error was harmless beyond a reasonable doubt.”).
B. Law
¶17          “The right to counsel exists at every critical stage of a criminal proceeding.” Key, 865 P.2d at 825 (citing U.S. Const. amend. VI; Colo. Const. art. II, § 16; United States v. Cronic, 466 U.S. 648, 659 (1984); People v. Roybal, 618 P.2d 1121, 1126 (Colo. 1980)); see People v. Payne, 2014 COA 81, ¶6. “Stages of criminal proceedings have been held to be ‘critical’ where there exists more than a ‘minimal risk’ that the absence of the defendant’s counsel might impair the defendant’s right to a fair trial.” Key, 865 P.2d at 825 (citing Gilbert v. California, 388 U.S. 263, 267 (1967); Sandoval v. People, 172 Colo. 383, 389, 473 P.2d 722, 725 (1970)).
¶18          “[A] defendant in a criminal case has a fundamental right under the Colorado Constitution to have counsel present ‘when the judge gives instructions to the jury or responds to questions from the jury.’” Id. (quoting Leonardo v. People, 728 P.2d 1252, 1257 (Colo. 1986)). “It is therefore constitutional error for a trial judge to respond to an inquiry from a jury without first making reasonable efforts to obtain the presence of the defendant’s counsel.” Id. (quoting Leonardo, 728 P.2d at 1257).
C. Analysis
¶19          Because a defendant is entitled to counsel at every critical stage of the proceedings, and the court’s discussions with the prosecutors and the jurors constituted critical stages, we conclude defendant’s Sixth Amendment right to counsel was violated.
¶20          The court’s decision to sequester the jury was a critical stage of the proceedings because the absence of defense counsel meant defendant’s interests were unprotected and there existed more than a minimal risk that defendant’s right to a fair trial was impaired. We reach this conclusion notwithstanding the prosecutors’ fear that defense counsel might have endangered the safety of the CI if he had been informed of the threat. The record establishes that defendant was represented by more than one attorney, and the court could have informed the attorney who was not alleged to have acted unethically of the reason for sequestration (without sharing that information with co-counsel). Defense counsel then could have made any objections, motions, or other requests necessary to protect defendant’s interests. Similarly, the court could have appointed independent conflict advisement counsel to represent defendant’s interests.[6]
¶21          Instead, by intentionally excluding defense counsel, the court and the prosecution denied defendant representation which could have advocated for his interests. Indeed, we reject the prosecution’s position, advanced at trial during the ex parte hearing, that “[w]e don’t believe this information itself would have any bearing upon the defendant’s right to a fair trial in this case.” It is not the role of the prosecution to determine whether a defendant’s rights are violated.
¶22          We further conclude that the trial court’s decision to inform the jury of the threat without the presence of counsel also violated defendant’s right to be represented at every critical stage of the proceedings. Discussions between the court and a deliberating jury are critical. Cf. Key, 865 P.2d at 825 (scheduling pressures create a risk of coercion on the jury’s deliberative process and the presence of counsel is essential in such circumstances to gauge the reactions of the jurors, preserve objections, and move for a mistrial if warranted).
¶23          The People argue that this case requires the court to balance a defendant’s right to be present and represented at all critical stages of a criminal trial “against the jury member’s interest in remaining free from real or threatened violence.” United States v. Edmond, 52 F.3d 1080, 1090 (D.C. Cir. 1995). However, defendant was entitled to representation during the trial court’s conversations with the prosecutors and the jury, and he was not afforded that representation. Juror safety and a defendant’s rights are not mutually exclusive concepts, but rather should exist together. Hence, there was no “balancing” as the People argue; instead, defendant’s Sixth Amendment right was not considered.
¶24          Protecting a jury from a potential threat should not remove the protection of a defendant’s basic constitutional rights. See United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994) (holding anonymous and sequestered jury was an appropriate procedure to protect juror safety but this procedure must be balanced against “the defendant’s interest in conducting meaningful voir dire and in maintaining the presumption of innocence”); see also Edmond, 52 F.3d at 1090 (“[N]either the right to a presumption of innocence nor the right to exercise peremptory challenges is a constitutional absolute; each, at times, must yield to the legitimate demands of trial administration and courtroom security so long as steps are taken to ensure that the defendant receives a fair trial.”) (emphasis added).
¶25          And those cases cited by the People for the proposition that “trial courts may protect jurors by sequestration or impanelling anonymous juries” do not hold that a defendant’s rights may be violated while doing so. See People v. Perez, 2013 CO 22, ¶12 (Federal courts may not impanel anonymous juries unless there is a strong reason to conclude the jury needs protection and “reasonable safeguards have been adopted to minimize the risk that the rights of the accused will be infringed.” (emphasis added) (quoting United States v. Dinkins, 691 F.3d 358, 372 (4th Cir. 2012))); see also Perez, ¶12 n.4 (collecting cases).
¶26          We also conclude the People have failed to establish that these errors were harmless beyond a reasonable doubt. First, we reject the People’s contention that there was overwhelming evidence of defendant’s guilt. For example, there were conflicting witness accounts and credibility issues; the weapon used was never recovered. Second, we are not confident beyond a reasonable doubt that this error did not contribute to the verdict because, in the trial court’s own words, the decision to sequester the jury was “quite dramatic” and resulted in the jury being driven from the courthouse to the motel by “[thirty] or so deputies . . . that would leap frog from intersection to intersection stopping traffic so this convoy would never stop, and was traveling at extraordinarily high speeds . . .[sixty], [seventy], [eighty] miles an hour sometimes.” Based on these procedures and the effect they necessarily had on the jury, there appears a reasonable probability defendant was prejudiced. And third, had defense counsel been present when the prosecutors and the court discussed the sequestration, he could have, like any advocate should, made sure the court’s order was tailored so that it did not implicate defendant. In this instance, defendant was denied that representation. Therefore, we cannot conclude that these errors were harmless beyond a reasonable doubt so reversal is required.
III. Right to Be Present
¶27          Defendant further contends the court’s ex parte communications with the prosecution and the jury violated his Fourteenth Amendment right to be present at all critical stages of his trial. Again, we agree.
A. Standard of Review
¶28          “Whether a trial court violated a defendant’s right to be present is a constitutional question that is reviewed de novo.” People v. Wingfield, 2014 COA 173, ¶13 (citing People v. Price, 240 P.3d 557, 560 (Colo. App. 2010)).
¶29          We apply constitutional harmless error analysis to claims of denial of a defendant’s right to be present at trial. People v. Ragusa, 220 P.3d 1002, 1009 (Colo. App. 2009); accord Payne, ¶7.
B. Law
¶30          “Article II, section 16, of the Colorado Constitution, and the Due Process Clause, as well as the Sixth Amendment to the United States Constitution, guarantee the right of a criminal defendant to be present at all critical stages of the prosecution.” People v. White, 870 P.2d 424, 458 (Colo. 1994); accord Payne, ¶6. The right to be present guarantees a defendant’s presence “whenever [his] presence has a reasonably substantial relation to the fullness of [his] opportunity to defend against the charges.” Payne, ¶11; see Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (“[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.”).
¶31          Federal cases have held that “a defendant has a right to be present when a jury is given instructions in open court, regardless of whether the defendant can provide any assistance to his or her counsel.” Payne, ¶12 (citing Larson v. Tansy, 911 F.2d 392, 395­96 (10th Cir. 1990); United States v. Fontanez, 878 F.2d 33, 38 (2d Cir. 1989); Wade v. United States, 441 F.2d 1046, 1050 (D.C. Cir. 1971)). This is because “in-court communications with the jury can have a psychological impact on the jury that may benefit the defendant.” Id.
¶32          “[D]efense counsel cannot waive a defendant’s right to presence at critical stages of criminal proceedings.” Wingfield, ¶19 (citing People v. Curtis, 681 P.2d 504, 511 (Colo. 1984)).
C. Analysis
¶33          We conclude defendant’s right to be present was violated when the court discussed with the prosecutors what to tell the jurors about its decision to sequester them.
¶34          The People contend that this communication was “for scheduling, administrative, or emergency purposes not involving substantive matters” and therefore did not require defendant’s (or defense counsel’s) presence. See C.J.C. 2.9(A)(1) (emphasis added); see also Colo. RPC 3.5(b) & cmt. 2. We reject the contention that the court’s decision to sequester the jury based on a credible threat was not a substantive matter.
¶35          Furthermore, C.J.C. 2.9(A)(1)(b) requires that “the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.” It is undisputed that here the trial court withheld the reason for the sequester from defense counsel. While defense counsel eventually learned of the threat, it cannot be said to have been done “promptly.”
¶36          We further conclude that defendant’s right to be present was violated when the court informed the deliberating jury of the threat outside of his presence. See People v. Grace, 55 P.3d 165, 168 (Colo. App. 2001) (“A communication between the court and the jury during deliberations constitutes a critical stage of a trial.”), overruled on other grounds by Gibbons, ¶¶22, 33.
¶37          The People’s reliance on State v. Atwood, 602 N.W.2d 775 (Iowa 1999), is unavailing. In Atwood, a receptionist in the public defender’s office received an anonymous call threatening to kill the prosecutor, defense counsel, and the jury if a certain verdict in the case was not reached. Id. at 777. After the court was informed of the call, it “met with the attorneys and Atwood.” Id. at 778. “The court invited discussions and suggestions from the parties as to what to tell the jury.” Id. The court decided, over defense counsel’s objection, to inform the jury of the threat. “Immediately after the court’s discussion [with the jury], the court reporter read to the defendant and the attorneys the record of the conversation with the jury.” Id. The trial went forward, the parties made their closing arguments the next day, and the case was then submitted to the jury which found Atwood guilty. Id.
¶38          The Supreme Court of Iowa determined that under those circumstances the defendant’s right to be present was not violated. Id. at 781. The court noted that “[t]he parties had an opportunity to object both before (as to the procedure being proposed) and afterward (as to the actual content of the judge’s remarks),” and “defendant made no specific objection; he merely demanded a mistrial.” Id. Therefore, there was “no per se violation of Atwood’s constitutional right to be present.” Id.
¶39          The circumstances in Atwood are vastly different from what occurred here. First, after receiving the threat in Atwood, the court met with the defendant and attorneys; here, defendant and defense counsel were specifically excluded from the discussion on how to instruct the jury. Moreover, the court here withheld the true reason for sequestration from defendant and defense counsel. In Atwood, the court “invited discussions and suggestions” from the parties.
¶40          Second, the defendant in Atwood made no specific objection regarding the court’s procedure to inform the jury; here, the reconstructed record establishes that defense counsel specifically objected to the court’s decision to inform the jury, arguing that it “would be prejudicial” to defendant “because the jury would imply that the threat came from someone associated with the defendant.” The reconstructed record is silent whether defendant’s presence was requested during the phone conversation between counsel and the court, but at the hearing on reconstruction the court noted the “emergent” nature of the proceedings based on the logistics of moving thirty deputies and fourteen jurors. Based on the court’s recollection, it is unlikely the defendant’s presence would have been allowed.
¶41          Third, and perhaps most importantly, in Atwood the jury had not yet begun deliberations; here, the jurors were deliberating when the court informed them of the threat. Jury deliberations are a “critical stage” of the proceedings. Key, 865 P.2d at 825; Grace, 55 P.3d at 168.
¶42          Nor can we conclude that the denial of defendant’s right to be present was harmless beyond a reasonable doubt. Because defendant (and defense counsel) was not present and did not have an opportunity to object to the court’s communication with the jury, there is a reasonable probability this communication could have prejudiced defendant because counsel was unable to request a mistrial or an order narrowly tailored to protect defendant from the implication that he was the cause of the sequestration. Cf. People v. Wilford, 111 P.3d 512, 517 (Colo. App. 2004) (“When the defendant’s counsel is present and has an opportunity to review and object to the jury’s question, and the court properly responds to the question, there is no prejudice, and the defendant’s absence is harmless beyond a reasonable doubt.”).[7]
¶43          However, we do not agree with defendant that his exclusion from the phone conversation between counsel and the court was a denial of his right to be present requiring reversal. Similar circumstances have been found harmless beyond a reasonable doubt. See id.; see also Esnault v. People, 980 F.2d 1335, 1336-37 (10th Cir. 1992) (The defendant did not have a due process right to be present when the trial court and defense counsel conferred in response to a jury’s question regarding “a purely legal answer.”).
IV. Conclusion
¶44          We need not address defendant’s other assertions of error because they are unlikely to arise again on remand.
¶45          The judgment is reversed, the sentence is vacated, and the case is remanded for a new trial.
JUDGE ROMÁN and JUDGE NEY concur.

[1] Defendant was originally charged with two counts of attempted first degree murder, one count of conspiracy to commit first degree murder, one count of first degree assault, and two counts of crime of violence. The prosecution later added eight counts of attempted extreme indifference murder and two additional crime of violence counts. The case was tried to the jury only on the extreme indifference murder charges and the crime of violence counts.
[2] Nothing in the record confirms that defense counsel improperly provided information to parties outside the case or acted unethically. Recitation of these facts is necessary to put the arguments in context, but we express no opinion on defense counsel’s actions in this case.
[3] The court inadvertently failed to record its conversation with counsel. On limited remand from this court, the trial court reconstructed the record and said that defense counsel objected to sequestration because “informing the jury of any threat would be prejudicial to his client because the jury would imply that the threat came from someone associated with the defendant.”
[4] A “modified Allen instruction” is an instruction that a trial court may give to a jury regarding a possible deadlock. It should inform the jurors that (1) they should attempt to reach a unanimous verdict; (2) each juror should decide the case for himself or herself after impartial consideration with the others; (3) they should not hesitate to re-examine their views and change their opinions if convinced they are incorrect; and (4) they should not surrender their honest convictions solely because of the opinions of other jurors or for the purpose of returning a verdict. Gibbons v. People, 2014 CO 67, ¶17; see Allen v. People, 660 P.2d 896, 898 (Colo. 1983).
[5] In the reconstructed record, the court found that defense counsel objected to the court’s decision to inform the sequestered jury of the threat. And because the court did not timely inform defense counsel of the reasoning behind its initial decision to sequester the jury, additional preservation was unnecessary. See Crim. P. 51 (“[I]f a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him.”).
[6] The prosecutors’ allegation that defense counsel acted unethically created a potential conflict of interest between defendant and his counsel. Cf. People v. Delgadillo, 2012 COA 33, ¶20 (inquiry during trial into whether defense counsel had provided ineffective assistance “subtly but necessarily impugned” defense counsel’s reputation and placed counsel at odds with his client). When an actual conflict of interest arises between a defendant and his or her counsel, counsel and the court have specific obligations to disclose and discuss the conflict with the defendant. See People v. Edebohls, 944 P.2d 552, 556 (Colo. App. 1996); accord Delgadillo, ¶¶28-33. Here, because there was no inquiry into whether defense counsel actually provided witness interviews to family members of defendant who shared those with gang members, we cannot determine whether an actual conflict of interest existed between defendant and defense counsel. See Cuyler v. Sullivan, 446 U.S. 335, 350 (1980) (“In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer’s performance.”).
[7] We note with approval the procedure employed by the Iowa Supreme Court in State v. Atwood, 602 N.W.2d 775 (Iowa 1999), when deciding whether to sequester a jury.