# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 15, 2016

Plaintiff-Appellee,

v

No. 328378
Macomb Circuit Court

JOSHUA DAVID HOLLOWAY,

LC No. 2014-003346-FC

Defendant-Appellant.

Before: SAAD, P.J., and METER and MURRAY, JJ.

PER CURIAM.

Defendant was convicted by a jury of second-degree criminal sexual conduct (sexual contact with person under 13) (CSC-II), MCL 750.520c(1)(a),[1] and was sentenced to 1 to 15 years' imprisonment. Defendant appeals as of right. We affirm.

## I. DISCOVERY

Defendant first argues that the trial court violated his right to confront witnesses[2] when it denied his motion to compel discovery of DC's mental health records from Havenwyck, a mental health institution.

"A trial court's decision to conduct or deny an in camera review of records in a criminal prosecution is reviewed for an abuse of discretion." *People v Davis-Christian*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 329924); slip op at 2, citing *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994). " 'The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law.' " *Davis-Christian*, ___ Mich App at ___; slip op at 2, quoting *People v Lane*,

---

[1] Defendant was also charged with, but acquitted of, one count of first-degree criminal sexual conduct (sexual penetration of person under 13, perpetrator over 17) (CSC-I), MCL 750.520b(1)(a), and two counts of fourth-degree criminal sexual conduct (force or coercion) (CSC-IV), MCL 750.520e(1)(b).

[2] See US Const, Am VI, which was incorporated against the States through the 14th Amendment to the US Constitution. *Pointer v Texas*, 380 US 400; 855 S Ct 1065; 12 L Ed 2d 923 (1965).

308 Mich App 38, 51; 862 NW2d 446 (2014). Constitutional questions are reviewed de novo. *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015).

" 'Discovery should be granted where the information sought is necessary to a fair trial and a proper preparation of a defense.' " *Davis-Christian*, ___ Mich App at ___; slip op at 2, quoting *People v Laws*, 218 Mich App 447, 452; 554 NW2d 586 (1996). However, "defendants generally have no right to discover privileged records absent certain special procedures, such as an in camera review of the privileged information conducted by the trial court." *Davis-Christian*, ___ Mich App at ___; slip op at 2, citing MCR 6.201(C)(1) and (2).[3] Such a procedure works to balance a defendant's due process rights against the state's interest in protecting privileged communications and records. See *Stanaway*, 446 Mich at 648-650.

"[W]here a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an in camera review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense." *Stanaway*, 446 Mich at 649-650. MCR 6.201(C) was amended to reflect this rule. *Davis-Christian*, ___ Mich App at ___; slip op at 2. MCR 6.201(C)(2) provides, in pertinent part: "If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records." However, "disclosure should not occur when the record reflects that the party seeking disclosure is on 'a fishing expedition to see what may turn up.' " *Stanaway*, 446 Mich at 680, quoting *Bowman Dairy Co v United States*, 341 US 214, 221; 71 S Ct 675; 95 L Ed 879 (1951).

Here, and as the trial court found, defendant failed to demonstrate a good-faith belief, grounded in articulable fact, that DC's Havenwyck records likely contained material information necessary to his defense. Although he asserted that the records may reveal mental health issues and medications affecting DC's perception of, and ability to accurately recall, events, he did not explain how a diagnosis of bipolar disorder or depression had actually caused DC to misperceive his behavior, or lead to a false accusation. His assertions amounted to nothing more than a fishing expedition, and he failed to establish a reasonable probability that DC's Havenwyck records contain information necessary to support his theory that DC's mental health issues distorted her perception of his actions.

Defendant did, however, make a proper showing relative to any statements DC made to Havenwyck employees regarding defendant's acts. The evidence showed that DC made her initial disclosure regarding the acts at issue while she was at Havenwyck, and based on that showing the trial court should have reviewed the records in camera to determine whether any statements by DC would have been necessary for the defense. *Stanaway*, 446 Mich at 682-683. However, this was a harmless error, MCR 2.613 and MCL 769.76, because DC admitted that she gave a less detailed account of what occurred to Havenwyck and Child Protective Services (CPS), thus allowing defendant to attack the victim's credibility or consistency.

---

[3] Defendant does not contest the privileged nature of DC's Havenwyck records.

## II.  ANONYMOUS JURY

Defendant argues next that the trial court violated his right to a fair trial under the due process clause by impaneling an anonymous jury.  To preserve a challenge to a trial court's decision to refer to prospective jurors by numbers rather than by names, a defendant must object to the practice.  *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007), citing *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994).  Defendant failed to object when, during jury selection, the court stated, "I know it's less personal, not very friendly, I'm going to ask everyone, though, to refer to the jurors by their numbers and not their names, please."  Thus, this issue has not been preserved for appellate review.

Generally, a "court's decision to refer to jurors by number rather than name is a decision concerning the conduct of voir dire, which we will review for abuse of discretion."  *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000).  However, unpreserved issues are reviewed for plain error.  *Hanks*, 276 Mich App at 92, citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).  "To establish plain error requiring reversal, a defendant must demonstrate that '1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.' "  *Hanks*, 276 Mich App at 92, quoting *Carines*, 460 Mich at 763.

"An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public."  *Williams*, 241 Mich App at 522.  "In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised."  *Id*. at 523.

Nothing in the record indicates that any relevant information about prospective jurors was withheld from defendant, and so nothing prevented him from conducting meaningful voir dire.  The trial court, defense counsel, and the prosecutor all questioned potential jurors regarding marital statuses, occupations, and other personal information.  In fact, in his brief on appeal, defendant concedes that defense counsel was provided background information for the jurors.  Further, nothing suggests that using numbers to identify the prospective jurors compromised defendant's presumption of innocence.  The trial court made no statement to suggest that its use of numbers was unusual or that it intended to use numbers for any purpose other than logistics.  Instead, the trial court simply asked that everyone refer to the prospective jurors by numbers rather than by names.

Defendant asserts that the trial court failed to minimize the prejudicial impact of its practice by instructing the jury that it only used numbers for administrative purposes.  Although in *Hanks* this Court suggested that it would be the preferred practice for trial courts to "advise the venire that any use of numbers in lieu of jurors' names is simply for logistical purposes," neither *Williams* nor *Hanks* mandates such an instruction.  *Hanks*, 276 Mich App at 94.  And here, although the trial court failed to provide a specific instruction related to the use of numbers, it repeatedly instructed the jury on the presumption of innocence, the prosecution's burden to

prove defendant's guilt beyond a reasonable doubt, and its duty to decide the outcome of the case based on the evidence presented.[4]

## III.  EVIDENCE OF PORNOGRAPHY

Next, defendant argues that that the trial court erred by permitting DC to testify that defendant watched pornography while in the bedroom with her.  When an evidentiary issue has been preserved on appeal, we review the trial court's decision to admit evidence for an abuse of discretion, and review de novo "preliminary questions of law, such as whether a rule of evidence precludes admissibility."  *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).  "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes."  *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).  Constitutional questions, including due process claims, are reviewed de novo.  *Smith*, 498 Mich at 475.[5]

Defendant's argument is that DC's testimony about pornography was irrelevant, and that any probative value it may have had was substantially outweighed by the danger of unfair prejudice.  Evidence is relevant if it has " 'any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence.' "  *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003), quoting MRE 401.  "[A] material fact need not be an element of a crime or cause of action or defense but it must, at least, be in issue in the sense that it is within the range of litigated matters in controversy."  *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013), quoting *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996) (citations and quotation marks omitted).  Generally, relevant evidence is admissible at trial while irrelevant evidence is not.  MRE 402; *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011).  Evidence that is relevant may still be excluded if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  MRE 403.  " 'Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury.' "  *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011), quoting *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005).

For a defendant to be convicted of CSC-II or CSC-IV, the defendant must have engaged in sexual contact with the victim.  MCL 750.520c(1); MCL 750.520e(1).  Sexual contact is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ."  MCL 750.520a(q).

---

[4] Defendant argues that this Court should overrule *Hanks*, relying on *US v Sanchez*, 74 F3d 562 (CA 5, 1996), and *State v Tucker*, 259 Wis 2d 484; 657 NW2d 374 (2003).  However, this Court considered *Sanchez* and *Tucker* in *Hanks*, and concluded, "We are not persuaded that *Williams* was wrongly decided."  *Hanks*, 276 Mich App at 95.

[5] Defendant couches this evidentiary issue in part in "due process" terms.

Evidence that defendant watched pornography, an activity generally undertaken for sexual gratification, while in the bedroom with DC, makes the claim that defendant cuddled DC for the purpose of "sexual arousal or gratification" more probable than it would be without the evidence. This would be true even if defendant did not cuddle DC immediately before or after watching the pornography, and even though DC testified that defendant never showed her the pornography. According to DC, the sexual abuse perpetrated by defendant occurred while lying down in defendant's bedroom, and she would often be in his bedroom to watch television or movies on a laptop.

In addition, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. DC's testimony regarding the pornography watching was brief. She testified much more extensively about defendant's behavior during the cuddling and "spooning" incidents themselves. Also, the prosecutor did not discuss the pornography evidence in his closing or rebuttal arguments.

Thus, the trial court did not abuse its discretion, or violate defendant's due process rights, when it allowed the introduction of DC's testimony that defendant watched pornography while in bed with DC. Such testimony was relevant, and its probative value was not substantially outweighed by the danger of unfair prejudice.

IV. PROSECUTORIAL ERROR

Defendant's next argument is that the prosecutor erred by arguing facts not in evidence during his rebuttal argument, and that as a result he is entitled to a new trial. Specifically, defendant takes issue with the prosecutor's statement that "[d]elayed disclosures about pedophiles are a reality."

To preserve a claim of prosecutorial error,[6] a defendant must contemporaneously object to the alleged error and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). If a defendant fails to timely and specifically object below, review is generally precluded " 'except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice.' " *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008), quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant failed to object to the challenged statements made by the prosecutor regarding delayed disclosures. Thus, defendant failed to preserve this issue for appellate review.

Claims of prosecutorial error that have not been preserved are reviewed for "outcome-determinative, plain error." *Unger*, 278 Mich App at 235. " 'Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Id.*, quoting *Callon*, 256 Mich App at 329.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court

---

[6] See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

"consider[s] issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

The prosecutor's challenged statement, that "[d]elayed disclosures about pedophiles are a reality," was made in response to defense counsel's statements, during closing argument, questioning DC's credibility in light of her delayed disclosure of the sexual abuse. Prosecutors may "argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case," but "[a] prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 236, 241. Defendant is correct that the prosecution never introduced an expert witness to testify regarding the prevalence of delayed disclosures in sexual abuse cases. However, DC confirmed, at trial, that she had only recently disclosed defendant's sexual abuse, and provided explanations for why she failed to speak about the abuse sooner. Arguably, then, the prosecutor's general statement about the reality of delayed disclosures can be considered a reasonable inference from DC's testimony about her own delayed disclosure.

Regardless, even if the prosecutor committed error by arguing facts not in evidence, reversal is not required. It is unlikely that the prosecutor's comment had any effect on the jury's decision. DC testified extensively regarding the sexual abuse she suffered while living with her mother and defendant. Further, defense counsel questioned DC about her failure to alert the police and CPS to defendant's behavior, and DC testified about why she waited to disclose the abuse. Thus, the jury was presented with substantial evidence regarding DC's delayed disclosure to make credibility and guilt determinations.

In addition, curative instructions will cure most inappropriate prosecutorial statements, and it is presumed that jurors will follow their instructions. *Unger*, 278 Mich App at 235. Here, the trial court instructed the jury that it must decide the facts of the case, and make credibility determinations, based on the evidence presented, and that the attorneys' arguments must not be considered evidence.

V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that defense counsel was ineffective for failing to object to the prosecutor's error, and that he is entitled to a new trial.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews a trial court's findings of fact for clear error, and reviews questions of constitutional law de novo. *Id*. The defendant must establish a factual predicate for the ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because defendant did not seek a new trial or *Ginther*[7] hearing in the trial court, and this Court denied his motion to remand, this Court's

---

[7] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

review is limited to the appellate record. See *Sabin* (*On Second Remand*), 242 Mich App at 658-659.

To evaluate a claim of ineffective assistance of counsel, this Court uses the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *Hoag*, 460 Mich at 5-6, citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). For a successful claim of ineffective assistance of counsel, the defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014).

We need not decide whether defense counsel's performance fell below an objective standard of reasonableness when he failed to object to the prosecutor's statement, during rebuttal argument, that delayed disclosures are a reality in pedophile cases. Even if the prosecutor committed error by making the statement, and defense counsel was therefore ineffective for failing to object to the statement, for the same reasons provided above, defendant cannot show that but for defense counsel's deficient performance, the outcome of trial would have been different. DC testified extensively regarding defendant's sexual behavior towards her throughout the time she lived with her mother and defendant. Further, from DC's testimony at trial, the jury was presented with substantial evidence regarding DC's delayed disclosure to make credibility and guilt determinations. Thus, it is unlikely that the prosecutor's general statement about delayed disclosures impacted its decision.

Affirmed.


/s/ Henry William Saad
/s/ Patrick M. Meter
/s/ Christopher M. Murray